WATER COMMISSION OF the COUNTY OF HAWAI'I, and the Department of Water Supply of the County of Hawai'i, Plaintiffs,

v.

NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation; Thomas Kohoutek; Jeffrey S. Kohoutek; Steven Conner; Surety Insurance Services of the Northwest, Inc., a Washington corporation; and Midwest Indemnity Corporation, an Illinois corporation, Defendants.

Civil No. 95–00285 DAE.

United States District Court, D. Hawai'i.

July 5, 1996.

Sherman S. Hee, Honolulu, HI, for Water Commission, Water Supply, Department of, of the County of Hawai'i.

Stuart N. Fujioka, Nishioka & Fujioka, Honolulu, HI, Richard L. Lambe, Ulin Lambe & Hicks, Seattle, WA, for National American Insurance Company.

Robert J. Hackman, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Surety Insurance Services of the Northwest, Inc., a Midwest Indemnity Corp.

*ORDER DENYING DEFENDANT NATIONAL AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING WITHOUT PREJUDICE DEFENDANTS SURETY INSURANCE SERVICES OF THE NORTHWEST AND MIDWEST INDEMNITY CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND DENYING NATIONAL AMERICAN INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFFS' SUPPLEMENTAL MEMORANDUM*

DAVID ALAN EZRA, District Judge.

The court heard the parties' motions on June 5, 1996. Sherman S. Hee, Esq., appeared at the hearing on behalf of Plaintiff Water Commission of the County of Hawai'i and the Department of Water Supply of the County of Hawai'i ("Plaintiffs"); Stuart N. Fujioka, Esq., and Richard L. Lambe, Esq., appeared at the hearing on behalf of Defendant National American Insurance Company ("NAIC"); and Robert J. Hackman, Esq., appeared at the hearing on behalf of Defendants Surety Insurance Services of the Northwest, Inc. ("SISNW"), and Midwest Indemnity Corporation ("Midwest Indemnity"). Defendants Jeffrey S. Kohoutek and Steven Conner did not appear at the hearing.[1] At the hearing, the court directed Plaintiffs and NAIC to submit supplemental briefing as to the equitable estoppel issue discussed *supra*, which both parties filed on June 21, 1996. Additionally, the court granted Plaintiffs leave to file a Memorandum in Opposition to SISNW and Midwest Indemnity's Motion to Dismiss, and permitted SISNW and Midwest Indemnity to file a Supplemental Memorandum in response. Those documents were filed on June 14, 1996, and on June 21, 1996, respectively. After reviewing the motions and the supporting and opposing memoranda, the court DENIES Defendant NAIC's Motion for Summary Judgment; DENIES Plaintiffs' Cross–Motion for Partial Summary Judgment; GRANTS WITHOUT PREJUDICE Defendants SISNW and Midwest Indemnity's Motion to Dismiss First Amended Complaint; and DENIES NAIC's Motion to Strike Plaintiffs' Supplemental Memorandum in Opposition to NAIC's Motion for Summary Judgment.

## BACKGROUND

This case arises out of the issuance of a construction performance bond to Plaintiff Water Commission of the County of Hawai'i ("Water Commission") in connection with a water well project in Waiaha on the Island of Hawai'i. In 1990, the Water Commission awarded a contract to Paul Frandsen and Associates ("Frandsen") for the construction of a well. On October 25, 1990, Plaintiffs gave Frandsen formal notification to proceed; the work was to commence on November 5, 1990, and was to be completed on or before October 21, 1991. *See* Exhibit "E" to Declaration of Sherman S. Hee ("Hee Decl."), Plaintiffs' Memorandum in Opposition to NAIC's Motion for Summary Judgment. Frandsen completed the drilling and casing of the Waiaha well by March 1992. Pursuant to the construction contract, Frandsen was required to test the well to ensure that it would produce an adequate quantity of water. To run the test, Frandsen lowered a pump down the well shaft. In September 1992, while installing the test pump, Frandsen accidentally dropped it down the 1,062–foot deep well, where it became securely lodged. According to Plaintiffs, Frandsen had filed for bankruptcy (Chapter 7), and was unable to retrieve the pump. Apparently, subsequent efforts to remove the test pump have failed, and the well has been made unusable.

As required by the contract, Frandsen gave the Water Commission a $1,007,565 surety bond guaranteeing its performance of the contract, naming as NAIC as the surety. The bond was signed by Steven Conner of Pacific Bonding, Inc., as "Attorney-in-fact" for NAIC. Plaintiffs allege that during Frandsen's negotiations with Pacific Bonding

---

1. Thomas Kohoutek was dismissed without prejudice from this action by stipulated order entered May 1, 1996.

for the issuance of a performance bond, Conner "bore" three documents which indicated that he was in fact an agent for NAIC: a Notice of Appointment of General Agent effective April 3, 1990 ("Notice of Appointment"), *see* Exhibit "C–4" to Declaration of Sherman S. Hee ("Hee Decl."), Plaintiffs' Memorandum in Opposition to NAIC's Motion for Summary Judgment; an Appointment of General Agent filed on March 29, 1990, with the Insurance Division of the State of Hawai'i ("Certificate of Appointment"), *see* Exhibit "A" to Hee Decl.; and a "General Agent's License" issued April 3, 1990 by the State of Hawai'i Insurance Division. *See* Exhibit "C–3" to Hee Decl.

Plaintiffs aver that as required by the Department of Water Supply, a notarized Power of Attorney accompanied the bond, which had NAIC's name on it and bore the ostensible signatures of Winifred Mendenhall, NAIC's Assistant Secretary, and Brent LaGere, its Chairman and Chief Executive. Exhibit "C–2" to Hee Decl. According to Plaintiffs, the seal bearing NAIC's name, affixed to the Power of Attorney, closely resembles NAIC's corporate seal on the publicly-filed Certificate of Appointment. Plaintiff also alleges that in addition to the Power of Attorney, the closing documentation between Frandsen and Pacific Bonding included the notarized Notice of Appointment and Pacific Bonding's General Agent's License. Plaintiffs admit that since the required documentation appeared to be in good order, the Department did not investigate the authenticity of the bond.

At all times relevant to this action, Pacific Bonding, Inc. was a party to a Sub–Agency Agreement with SISNW. *See* Exhibit "A" to Declaration of Steven A. Swerdloff ("Swerdloff Decl."), Supplemental Memorandum in Support of Defendant NAIC's Motion for Summary Judgment.[2] SISNW was a sub-agent to Midwest Indemnity Company that in turn was an agent to NAIC. This Sub–Agency Agreement strictly limited Pacific Bonding's authority, and stated, "No bonds shall be issued without prior written approval of the Agent [SISNW] ... This requirement shall supercede [sic] any contrary provision in the Agreement." *See* Exhibit "A" to Swerdloff Decl. (Exhibit B to Sub–Agency Agreement). NAIC contends that although Pacific Bonding never obtained any authority to issue the bond now held by the Water Commission, it nevertheless issued the bond and received and retained the entire premium. NAIC also maintains that it did not learn of the bond until after problems had already arisen with the project, approximately three years after the issuance of the bond by Pacific Bonding.

On March 21, 1995, Plaintiffs filed their original complaint in the Circuit Court of the Third Circuit, State of Hawai'i, Civil No. 95–135, naming NAIC as Defendant. NAIC removed the action to this court pursuant to 28 U.S.C. § 1332, on April 14, 1995.[3] Plaintiffs filed a First Amended Complaint on December 19, 1995, which added as Defendants Thomas Kohoutek, Jeffrey S. Kohoutek, Steven Conner, SISNW and Midwest Indemnity, and alleged an additional claim (intentional misconduct/gross negligence) against all Defendants.[4]

2. That Sub–Agency Agreement between SISNW and Pacific Bonding was signed on July 2, 1990, by Steven A. Swerdloff for SISNW and by Jeffrey S. Kohoutek for Pacific Bonding. Exhibit "A" to Swerdloff Decl.

3. Plaintiffs' original complaint alleged that the Department of Water Supply of the County of Hawai'i "is a semi-autonomous department of the County of Hawai'i, and consists of a Water Commission, Manager and necessary staff." Original Complaint at ¶ 1. Plaintiffs therefore are residents of the State of Hawai'i. National American is a Nebraska corporation, with its principal place of business in Chandler, Oklahoma. Notice of Removal at ¶ 5. Additionally, Plaintiffs allege that Jeffrey Kohoutek is a resi-

dent of Washington, and that Steven Conner is a resident of Oregon. First Amended Complaint at ¶¶ 4–5. Plaintiffs also allege that Defendant SISNW is a citizen of Washington and that Midwest Indemnity is an Illinois corporation. *Id.* at ¶¶ 6–7.

4. On June 3, 1996, Magistrate Judge Yamashita denied Plaintiffs' Second Motion to Amend Complaint, which was filed on April 26, 1996. Subsequently, on June 18, 1996, the magistrate again denied without prejudice Plaintiffs' Motion to Amend Complaint. The magistrate reasoned that Plaintiffs had neither recited good cause nor established due diligence sufficient for an amendment at that time.

Defendant NAIC filed its motion for summary judgment on January 8, 1996. Defendants SISNW and Midwest Indemnity filed a joinder in NAIC's motion for summary judgment on May 17, 1996. Defendants SISNW and Midwest Indemnity also filed a motion to dismiss on March 1, 1996. Plaintiffs oppose NAIC's motion for summary judgment and also cross-move for partial summary judgment.[5] Plaintiffs filed a memorandum in opposition to SISNW and Midwest Indemnity's Motion to Dismiss on June 14, 1996, in response to which SISNW and Midwest Indemnity filed a Supplemental Memorandum on June 21, 1996.

## STANDARD OF REVIEW

### I. Summary Judgment

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2519. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. at 2513. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to

---

**5.** Plaintiffs filed a Supplemental Memorandum in Opposition to NAIC's Motion for Summary Judgment on May 13, 1996. On May 31, 1996, NAIC filed a Motion to Strike Plaintiffs' Supplemental Memorandum, arguing that Plaintiffs failed to obtain leave of court prior to filing it. While NAIC is technically correct, the court DENIES NAIC's motion because the information and arguments contained in Plaintiffs' Supplemental Memorandum are helpful to the resolution of the instant motions. Moreover, NAIC had an adequate opportunity to respond to Plaintiffs' Supplemental Memorandum in its Motion to Strike. However, Plaintiffs are warned that if further supplemental filings are made without leave of court and in violation of applicable Local Rules, such filings will be stricken and Plaintiffs' counsel may be sanctioned.

a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## II. Motion to Dismiss

■■■■■ A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Id.*

## DISCUSSION

### I. Summary Judgment

NAIC moves for summary judgment on three grounds: (1) Plaintiffs' suit is barred by the statute of limitations set forth in the 1983 version of Haw.Rev.Stat. § 657–8; (2) Plaintiffs' claim is barred because it relies upon a bond signed by a person without authority to issue the bond; and (3) Plaintiffs cannot prevail on their gross negligence claim against NAIC because there is no evidence to support it, or alternatively, because

it is barred by the applicable statute of limitations. Haw.Rev.Stat. § 657–7. Plaintiffs oppose the motion, and cross-move for summary judgement on their claim that Pacific Bonding had actual and apparent authority to issue the bond.

### A. *Statute of Limitations*

NAIC argues that Plaintiffs' suit is barred by the two-year statute of limitations set forth in the pre–1994 version of Haw.Rev. Stat. § 657–8.[6] Characterizing Plaintiffs' suit as a claim "to recover damages for injury to property," i.e., the well, "arising out of [a] deficiency or neglect in the construction ... relating to an improvement to real property," NAIC claims that § 657–8 is applicable here. NAIC also asserts that the pre-amended version of the statute should be applied, since the Hawai'i Legislature did not indicate that the amended provision should be applied retroactively. *See Yamaguchi v. Queen's Medical Ctr.,* 65 Haw. 84, 89, 648 P.2d 689 (1982).

Moreover, NAIC contends that the limitations period was triggered either on September 8, 1992, when the dropped pump damaged the well, because it was at that time that Plaintiffs knew or should have known that an actionable wrong had been committed, *see id.* at 88, 648 P.2d 689, or, at the

---

**6.** The 1983 version of Haw.Rev.Stat. § 657–8 provides:

> § 657–8. Limitation of action for damages based on construction to improve real property. No action to recover damages for any injury to property, real or personal, arising out of any deficiency or neglect in the planning, design, suretyship, manufacturing and supplying of materials, construction, supervision and administering of construction, and observation of construction relating to an improvement to real property shall be commenced more than two years after the cause of action has accrued, but in any event not more than ten years after the date of completion of the improvement. This section shall not apply to actions for damages against the owner or any other person having an interest in the real property or improvement based on their negligent conduct in the repair or maintenance of the improvement or to actions for damages against surveyors for their own errors in boundary surveys. The term "improvement" as used in this section shall have the same meaning as in section 507–41 and the phrase "date of completion" as used in this section

shall mean the time when there has been substantial completion of the improvement or the improvement has been abandoned ... Inclusion of sureties in this section shall not be construed to prevent, limit or extend any shorter period of limitation applicable to sureties provided for in any contract or bond or any other statute, nor to extend or add to the liability of any surety beyond that for which the surety agreed to be liable by contract or bond.

Haw.Rev.Stat. § 657–8 (pre–1994 amendment). The 1994 version of the provision, effective June 1, 1994, deleted references to suretyship, and states in relevant part:

> (a) No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any deficiency or neglect in the planning, design, construction, supervision and administering or construction, and observation of construction relating to an improvement to real property, shall be commenced more than two years after the cause of action has accrued, but in any event not more than ten years after the date of completion of the improvement.

latest on December 8, 1992, when it sent a demand letter to Pacific Bonding. *See* Exhibit "C" to Declaration of William Lambe ("Lambe Decl.").[7]

Plaintiffs maintain that NAIC's argument focuses on "the wrong duty, the wrong statute, and the wrong conduct." Plaintiffs' Opposition at 9. First, Plaintiffs dispute that their claims accrued in either September or December of 1992. According to Plaintiffs, their cause of action did not accrue until December 1994 at the earliest, when it became clear to Plaintiffs that NAIC was not going to fund the completion of the Waiaha well or the drilling of a replacement well. Plaintiffs state that, "[u]ntil [that] point, there was no damage or breach of duty by *NAIC* to be discovered or complained of by the Department of Water Commission." *Id.* at 9 (emphasis in original). Alternatively, Plaintiffs argue that NAIC effectively "lulled" them into a delay in filing suit and that the limitations period was tolled.

> The relevant language of the bond reads: IT IS HEREBY STIPULATED AND AGREED that suit on this bond may be brought before a court of competent jurisdiction without a jury, and that the sum or sums specified in said contract as liquidated damages shall be considered and held to be fixed and liquidated damages to be forfeited to the Water Commission of the County of Hawai'i, its successors and assigns, in the event of a breach of any or all or any part of the covenants, conditions, stipulations, or promises contained in said

contract and this obligation, in accordance with the terms thereof. . . .

*See* Exhibit "C–1" to Hee Decl. (emphasis added).

■ Although no Hawai'i court has addressed the question of when a cause of action against a surety arises with respect to a performance bond, cases from other jurisdictions provide some guidance here. In *United States v. Cocoa Berkau*, 990 F.2d 610, 611–12 (Fed.Cir.1993), the Government brought suit to recover liquidated damages and interest from a chocolate importer and surety under a single entry (customs) bond. In asserting a statute of limitations defense, the surety argued that the Government's right of action accrued when the bond was breached by the principal; since the Government filed its action more than six years after that date, the surety asserted that the Government's claims were time-barred. *Id.* at 612. The Government, on the other hand, claimed that its right of action accrued later, when the surety defaulted on its obligation under the bond. *Id.* The Court of Appeals for the Federal Circuit rejected the Government's argument and held that the bond was breached when the principal failed to comply with a provision in the entry bond, not when the surety failed to pay liquidated damages. *Id.* at 613;[8] *see C & L Rural Elec. Cooperative Corp. v. American Cas. Co.*, 199 F.Supp. 220, 222 (E.D.Ark.1961) ("It is [ ] well established that ordinarily an obligee's cause of action against his obligor's surety accrues at the same time as does the cause of action against the principal obligor, and that it is

---

**7.** Plaintiffs' letter to Pacific Bonding stated:

> This is to serve as notice that we will be terminating our contract with Paul Frandsen & Associates (PFA).
> We are totally dissatisfied with the progress made and the subsequent long delay by PFA in completing the work within the specified contract time. The contract completion date was for October 21, 1991. To date there are no indications that this project will be completed. The Water Commission of the County of Hawai'i further concurs with our proposed action. We will proceed with the calling of the bond (Bond No. NB 34 551) that PFA has with your firm.
> Exhibit "F" to Hee Decl.

**8.** The Federal Circuit stated:

> The law is well settled that, as a general rule, a claim does not accrue until all events neces-

sary to fix the liability of a defendant have occurred. With respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond . . . The critical issue on appeal is which event, the default of redelivery [of the imported goods] by the bond principal or the default of payment of liquidated damages by the bond surety, constituted the breach of the bond which fixed liability for purposes of triggering the statute of limitations.

990 F.2d at 613. The court then looked to the precise language of the bond and determined that the obligation to redeliver the goods upon a proper demand by Customs was to be borne by the principal. The court also stated that "[a]bsent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond." 990 F.2d at 614 (citation omitted).

not necessary for the principal's obligation to be settled or determined before the obligee can proceed against the surety."); *Turner Construction, Inc. v. American States Ins. Co.*, 397 Pa.Super. 29, 579 A.2d 915, 919 (1990) (determining that no right of action against surety arose on the performance bond until contractor declared its unwillingness to comply with its obligation to remedy its derelictions in performance). Importantly, the *Cocoa Berkau* court stated that, "[t]he accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance." *Id.* at 614.[9]

In contrast, in a case involving a "demand" bond, *United States v. Insurance Company of North America*, 83 F.3d 1507, 1510 (D.C.Cir.1996), the court reached an opposite conclusion. That court stated, "[w]hether a demand was required to trigger the statute of limitations depends on the terms of the bond. If it 'envisions an actual demand, the statute of limitations is set in motion only by such a demand.'" *Id.* (citation omitted). Reasoning that the surety's liability was expressly conditioned upon the Government's written demand and that the demand was mandatory, the court held that a demand was a prerequisite to liability and therefore to the running of the statute of limitations. *Id.* at 1510–11. It is undisputed here, however, that the bond at issue in this case is a standard performance bond, not a demand bond.

■ The foregoing cases constitute persuasive authority for the proposition that, in the absence of a specific provision to the contrary, a cause of action against a surety to collect on a performance bond accrues when a principal defaults on the underlying contract. A critical question in this statute of limitations analysis, therefore, focuses on when Frandsen was in breach of the construction contract. Under Hawai'i law, "a right of action accrues whenever ... a breach of ... contract has occurred ... as will give a right to then bring and sustain a suit." *Schimmelfennig v. Grove Farm Co.*, 41 Haw. 124, 130 (1955); *see also Waxman v. Citizens Nat. Trust & Sav. Bank of Los Angeles*, 123 Cal.App.2d 145, 266 P.2d 48, 50 (1954) ("Ordinarily, a cause of action for breach of contract accrues on the failure of the promisor to do the thing contracted for at the time and in the manner contracted.") Although neither NAIC nor Plaintiffs focus on this fact, the court recognizes that under the terms of Frandsen's contract with the Water Commission, Frandsen's performance was to be completed within 350 days from formal notification by the Commission. *See* Exhibit "B" to Hee Decl., filed March 11, 1996. As formal notification was given by the Commission on October 25, 1990, the scheduled completion date was October 21, 1991. Apparently, neither party takes the position that Plaintiffs' cause of action accrued on October 22, 1991, at which time Frandsen had failed to complete performance and was therefore in technical breach of its contract. The record reflects that Plaintiffs continued to provide Frandsen with opportunities to complete performance—until as late

**9.** Similarly, in *Insurance Company of North America v. United States*, 951 F.2d 1244 (Fed.Cir. 1991), at issue was a performance bond executed by a surety in connection with a Government timber removal project. The contractor (Summit) failed to complete the project in the time specified by the contract. *Id.* at 1245. The Federal Circuit concluded that a surety's obligation matures when a contractor defaults under a contract. *Id.* at 1246. The Federal Circuit reasoned:

> INA's [the surety's] bond guaranteed Summit's performance under the contract. When Summit defaulted on its contract, INA's obligation to pay arose. From that time forward, the Government could properly demand payment of the bond. Therefore, as this court has stated, a surety's obligation matures "[w]hen a contractor defaults under the contract."

> The surety's obligation to pay does not wait for completion of legal contests between the principal and the creditor. If a surety's obligation to pay only arose upon conclusion of lawsuits, the creditor would lose a significant part of the protection it bargained to obtain.

> In sum, litigation between Summit and the Government did not toll INA's independent surety obligations. As the United States Court of Appeals for the District of Columbia stated, "[t]he creditor's claim against the surety is independent of the claim against the debtor." INA's obligation to the Government matured when Summit breached its contract.

951 F.2d at 1247 (internal citations omitted).

as February 19, 1993, when the trustee for Frandsen's bankrupt estate reported that Frandsen was abandoning the Waiaha well, *see* Exhibit "J" to Hee Decl.—despite the passing of the October 21, 1991 deadline. *See, e.g.,* Exhibits "G" and "H" to Hee Decl. (indicating that Plaintiffs gave Frandsen opportunities to complete the construction job).

 Rather, the parties focus on subsequent events in September 1992 through November 1994, as the relevant occurrences for purposes of determining the date of accrual of Plaintiffs' action. After a thorough review of the record, the court finds that Plaintiffs' cause of action accrued on December 9, 1992, when Plaintiffs affirmatively notified Frandsen that it would be terminating its contract with Frandsen and proceeding with the calling of the bond; it was at that time that Plaintiffs first communicated their position that Frandsen was in breach of the Waiaha well construction project and any informal extensions of the contract completion date had clearly expired.[10] However, for the reasons detailed below, the court finds that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to their claim that the statute of limitations should be equitably tolled as a result of NAIC's alleged misleading conduct.

Plaintiffs argue that particular conduct of NAIC from 1992 until 1994 effectively tolled the statute of limitations for almost the entire period from December 8, 1992 forward.[11] In *Mauian Hotel, Inc. v. Maui Pineapple Co.,* 52 Haw. 563, 570–71, 52 Haw. 582, 481 P.2d 310 (1971), the Hawai'i Supreme Court stated, "it is a well-settled principle that a defendant cannot avail himself of the bar of the statute of limitations, if it appears he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation period prescribed by the statute to run against him." *Id.* (citing *Hornblower v. George Washington Univ.,* 31 App.D.C. 64, 75 (1908)).

 "Equitable estoppel is a well established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another." *United States v. Fidelity & Cas. Co. of New York,* 402 F.2d 893 (4th Cir.1968). In *York Excavating Company v. Employers Insurance of Wausau,* 834 F.Supp. 733, 739 (M.D.Pa.1993), the court stated:

---

10. In a letter to Frandsen dated December 9, 1992, Plaintiffs stated:

> In accordance with Section 8.12 of the "General Requirements and Covenants" of the contract documents, *this is to serve notice that we will take action for the termination of the subject contract.* Progress made by you has been totally insufficient to complete the work within the specified contract time.
>
> Our Department had issued Notice to Proceed on November 5, 1990 with contract completion date of October 20, 1991. *We are suffering damages by your failure to complete the work on time.* We are unable to proceed with our next phase for the outfitting of the well into a production source. This additional source supply of water is urgently needed for our capital improvement program priorities.
>
> We are notifying your bonding company of the termination action and of the call on the performance bond by our Department.

Exhibit "F" to Hee Decl., filed March 11, 1996 (emphasis added). Subsequently, on January 13, 1993, Plaintiffs notified counsel for Frandsen that they would not be canceling the contract at that time, but that Plaintiffs had notified the bonding companies of their intention to call on the performance bond. *See* Exhibit "G" to Hee Decl. Plaintiffs further wrote: "We feel that although Frandsen has been given ample opportunity to complete the job, it is now apparent

they are unable to do so." *Id.* Further, on April 8, 1993, Connor (of Pacific Bonding) sent a letter by facsimile to William Sewake of the Water Commission, notifying him that on February 19, 1993, Wyman Lai, the Trustee for Frandsen's estate placed Pacific Bonding on notice that Frandsen was "abandoning" the Waiaha well. Exhibit "J" to Hee Decl. Connor requested a meeting with Sewake, "to go over our plan of action." Connor further wrote: "I am confident that without the constant interference from the bankruptcy proceedings, we can all work together to complete this well." Exhibit "J" to Hee Decl.

11. Plaintiffs argue:

> Either NAIC was truly continuing to conduct [ ] an evaluation [of its potential obligations] in January 1995, and thus had not yet disavowed the Bond, or NAIC was attempting to lure Plaintiffs into missing a presumed deadline for filing of suit triggered by correspondence from [Plaintiffs] in December 1992 and January 1993. Whereas the former conduct would preclude accrual, the latter conduct would toll the running of the limitation period by estoppel for a sufficient period (at least three months) to render Plaintiffs' action timely even under the (inapplicable) HRS § 657–8.

Plaintiffs' Opposition at 11 n. 2 (internal citations omitted).

Fraudulent misrepresentations by a defendant or its agent toll the statute of limitations if the defendant, through fraud or concealment, causes the plaintiff to relax his or her vigilance or to deviate from the right of inquiry ... In general, this requires that a defendant has done something amounting to an affirmative inducement to Plaintiff to delay bringing the action.

834 F.Supp. at 739 (internal citations omitted).[12] In Hawai'i, a party invoking "equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." *Doherty v. Hartford Ins. Group*, 58 Haw. 570, 573, 574 P.2d 132 (1978) (citing *De Freitas v. Trustees of the Campbell Estate*, 46 Haw. 425, 434, 380 P.2d 762 (1963)). In applying this doctrine, at least two courts have stated that fraud in the strictest sense (encompassing an intent to deceive) is not required; "rather fraud in the broadest sense which includes an unintentional deception," is sufficient. *York*, 834 F.Supp. at 739; *see United States ex rel. Humble Oil & Refining Co. v. Fidelity & Cas. Co. of New York*, 402 F.2d at 898. Importantly, "[w]hen there is a disputed material factual issue as to whether a suit is timely brought, a defendant should not be granted summary judgment on the basis of statute of limitations." *Del Rosario v. Kohanuinui*, 52 Haw. 583, 586, 483 P.2d 181 (1971);[13] *see also Waimea Falls Park, Inc. v. Brown*, 6 Haw.App. 83, 98, 712 P.2d 1136 (1985) ("In the final analysis, equitable estoppel is dependent upon a 'close analysis of

individual fact situations for its application.' ").

Plaintiffs allege that NAIC acted in a deceptive manner by signaling an intent to act as surety under the bond until approximately 1994, and that they relied upon NAIC's representations that it intended to fulfill its obligations under the bond. The court finds the following communications between Plaintiffs and NAIC significant in determining whether the statute of limitations was tolled by NAIC's conduct:

1. According to Plaintiffs, beginning in February 1993, counsel for Plaintiffs attempted to seek out NAIC's position with respect to its obligations under the bond. *See* Exhibits "H" and "I" to Hee Decl., filed March 11, 1996.

2. NAIC responded to Plaintiffs on April 5, 1993, stating that it would engage in an investigation of the well situation pursuant to a full reservation of rights. *See* Exhibit "J" to Hee Decl., filed March 11, 1996.

3. On May 7, 1993, counsel for NAIC entered into a stipulation with the Trustee for Frandsen's bankrupt estate[14] and the Water Commission, before the United States Bankruptcy Court for the District of Hawai'i, agreeing that the stay would be lifted in part to *"permit NAIC to proceed with completion of the projects under the bonds issued in favor of the County."* *See* Exhibit "A" to Hee Decl., filed June 21, 1996 (emphasis added). The Bankruptcy Court's Order Granting Motion to Approve Stipulation for Relief from Stay was entered on July 26, 1993, and mirrored the language of the parties' stipulation.[15]

---

12. Alternatively formulated, "[e]stoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay." *Id.* at 897 (quoting *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir.1959)).

13. In *Del Rosario*, the Hawai'i Supreme Court addressed the precise issue presented here: that is, whether the evidence raised the issue of estoppel. Specifically, the Court examined whether the plaintiff, "through his attorney, [was] in-

duced to refrain from filing suit [prior to a certain date] because" of the conduct of the defendant's attorney. 52 Haw. 583, 483 P.2d 181. The court noted that there were several factual disputes involved in the estoppel issue, which were to be left to the trier of fact. *Id.* at 586–88, 483 P.2d 181.

14. Plaintiffs report that Frandsen filed for Chapter 11 bankruptcy proceedings on November 19, 1991, which stayed all actions against Frandsen. *See* Plaintiffs' Memorandum Re: Equitable Estoppel at 4. However, Frandsen, while in bankruptcy, completed the drilling and casing of the Waiaha well in March 1992. *Id.*

15. The Order stated:
The stay provided by 11 U.S.C. § 362 shall be vacated to allow the County to declare the

4. Counsel for NAIC notified Plaintiffs on July 20, 1993, that it was reviewing the requirements for a "completing contractor," stated that it was contacting Frandsen and another contractor to solicit their interest in doing the work, and reported that the "penal sum of the bond [would] be reduced by the cost of retrieval and [that] the amount of the funds remaining under the bond [would] be reduced by the cost." *See* Exhibit "K" to Hee Decl.

5. Counsel for NAIC (mistakenly) [16] sent a letter to Plaintiffs on July 27, 1994, stating that NAIC had "reviewed all of the documents it received concerning the Waiaha Well Drilling Project," and outlining its proposal to satisfy its obligation under the bond issued to Frandsen. As part of the proposal, NAIC stated that it would attempt to put the well back in the condition it had been in prior to the pump being dropped into the well. The letter explained the plans in detail. *See* Exhibit "L" to Hee Decl.

6. Plaintiffs sent a letter to NAIC on August 24, 1994, requesting a response as to whether and how NAIC decided to proceed regarding the well. He wrote: "The time passing makes it more and more difficult for any negotiated resolution. The

> Debtor's [i.e., Frandsen's] Estate in default and terminate the contract between the County and the Debtor, being.... Job No. 89–504 for the Waiaha Well Exploratory Drilling, and to permit NAIC to proceed with completion of the projects under the bonds issued in favor of the County.
> Exhibit "B" to Hee Decl., filed June 21, 1996.

**16.** At the hearing, NAIC represented that the incomplete and unsigned July 27, 1994 letter, although sent by NAIC's then counsel to Plaintiffs, contained a proposal that was never authorized by NAIC. In response, the court stated that the letter was probative of whether Plaintiffs were in effect lulled into a delay in filing suit against NAIC. Richard Lambe, counsel for NAIC, admitted that the record was incomplete as to the circumstances of the July 27, 1994 letter, and agreed to clarify the facts surrounding the proposal in a supplemental memorandum.

NAIC's supplemental memorandum filed on June 21, 1996, contains the Declaration of Carina Y. Enhada ("Enhada Decl."), one of NAIC's attorneys in 1994. In it, Enhada attests that she sent the "draft" letter to her client, NAIC, for review and comment. She also states that the unsigned letter was mistakenly mailed by her secretary to Sherman Hee. Enhada also states:

present posture of the Commission is to seek recovery of the bond or the completion of the well." Counsel for NAIC responded: "The surety has proposed that the 50% of the cost of attempting to fish the pump out be applied against the penal sum of the bond. If its successful, then its moot. But if not, then the amount available under the bond for the cost of completion or of drilling a new well, will be the penal sum, reduced by ½ of the cost of attempting to fish out the pump. For example, if $200,000 is spent in the attempt, then the penal sum of the bond will be reduced by $100,000." [17] Exhibit "F" to Enhada Decl.

7. Plaintiffs sent a letter to NAIC on October 18, 1994, asking that it provide Plaintiffs with an update on NAIC's decision to proceed. The letter stated: "As before, I have tried to avoid the filing of a suit, in order to expedite the true purpose of the bond, that is to finish the well. Please let my office [sic] immediately, if the bonding company will honor its commitment to the County of Hawai'i or not. If I have no positive word from your office by the end of the month, I will assume the answer is negative and proceed accordingly."

> The proposal outlined in the July 27, 1994 draft was the result of investigations conducted by [NAIC] and its well-drilling consultants, as well as settlement discussions between our office and Mr. Hee in an attempt to determine whether there was a cost-effective solution to this dispute short of having to litigate liability under the performance bond.
> Enhada Decl. at ¶ 3. By letter dated August 1, 1994, Hee advised Enhada that the County rejected the draft proposal outlined in her July 27, 1994 letter. *See* Exhibit "M" to Hee Decl., filed March 11, 1996. After realizing that the letter had mistakenly been sent to Hee, Enhada states that she called Hee and told him that the draft letter had been mailed to him by mistake. Enhada Decl. at ¶ 4.

**17.** The letter continued:

> The proposal is conditioned upon the County agreement to accept the well "as drilled" if the pump can't be retrieved. The surety (and probably the County) doesn't want to spend the money only to find that the County won't accept the well for some reason, such as maybe the well being out of plumb or something like that. Please discuss this with the County at your meeting and let me know.
> Exhibit "F" to Enhada Decl.

8. Counsel for NAIC wrote Plaintiffs on November 18, 1994, stating "[b]efore the surety makes a final decision, they would like to examine the original of the bond. As we had discussed, the bond and power of attorney are forged and in cases such as this the original must be examined to see if there is any evidence of irregularity on the face of the bond." Exhibit "N" to Hee Decl. A correspondence that was sent from (new counsel for) NAIC to Plaintiffs on December 13, 1994, disputed the validity of the bond, and strongly suggested that NAIC would have strong defenses regarding its enforceability. *See* Exhibit "O" to Hee Decl.

As highlighted above, NAIC expressly indicated to Plaintiffs on April 5, 1993, that it would be conducting an investigation of the well construction project pursuant to a full reservation of rights, to remain in effect until revoked in writing by NAIC. *See* Exhibit "J" to Hee Decl. The court recognizes that NAIC's apparent willingness to engage in an investigation and in negotiations with Plaintiffs to determine its liabilities under the bond, does not itself establish that NAIC engaged in any deceptive conduct to warrant the tolling of the limitations period. However, the stipulation entered into by NAIC and the subsequent Order of the Bankruptcy court on July 26, 1993, expressly stated that the stay was to be lifted in part to "permit NAIC *to proceed with completion of the projects* under the bonds issued in favor of the County." *See* Exhibit "A" to Hee Decl., filed June 21, 1996 (emphasis added). This language, which was agreed to by NAIC, presents a question for a trier of fact to determine whether NAIC effectively revoked its reservation of rights. Further, the court notes that NAIC, throughout its detailed negotiations with Plaintiffs and before retaining new counsel, never explicitly reiterated its reservation.[18] Moreover, regardless of whether NAIC's counsel in July 1994 intended to mail a draft proposal to Plaintiffs' counsel, or whether NAIC in fact authorized the proposal, receipt of the proposal by Plaintiffs is probative of their reasonable reliance upon NAIC's representations, made during detailed negotiations, that NAIC planned to proceed to remove the pump from the well. The totality of the circumstances presented here raises genuine issues of material fact as to whether Plaintiffs detrimentally relied upon NAIC's representations that it would take affirmative steps to remedy the lodged pump, and whether Plaintiffs reasonably relied on such representations.[19] Thus, summary judgment is inappropriate here, and the court DENIES NAIC's Motion for Summary Judgment.

## B. *Sovereign Immunity*

Plaintiffs argue that even assuming NAIC is correct about the limitations trigger period and the applicability of the pre-amended version of 657-8, its claims are not subject to a statute of limitations defense pursuant to Haw.Rev.Stat. § 657-1.5.[20] The

**18.** The record reflects that the only time that NAIC did in fact restate that it continued to reserve all its rights and defenses was beginning December 13, 1994, when it first set forth in a letter to Plaintiffs the details regarding Conner's forged bond. *See* Exhibit "O" to Hee Decl.; *see also* Exhibit "P" to Hee Decl.

**19.** However, this case is distinguishable from those involving a Haw.Rev.Stat. § 657-20 claim; that provision extends the statute of limitations (to six years) as a consequence of a defendant's fraudulent concealment. *See Cunha v. Ward Foods,* 501 F.Supp. 830, 836 (D.Haw.1980). Indeed, Plaintiffs do not argue here that § 657-20 applies. Fraudulent concealment has been defined as the employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a right of action. *Au v. Au,* 63 Haw. 210, 215, 63 Haw. 263, 626 P.2d 173 (1981) (citation omitted). The acts relied on must be of an affirmative character and fraudulent. *Id.* Importantly, the Hawai'i Supreme Court has stated that the "fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. *If there is a known cause of action there can be no fraudulent concealment." Id.* at 215–16, 626 P.2d 173 (citations omitted) (emphasis in original). Here, under the facts presented, Plaintiffs cannot prevail in an argument that they were unaware they had a valid cause of action against NAIC until NAIC reported that it was not going to pay on the bond.

**20.** Haw.Rev.Stat. § 657–1.5 provides:

No limitation of actions provided for under this or any other chapter shall apply to bar the institution or maintenance of any action by or on behalf of the State and its agencies, unless the State is specifically designated in such a

court finds no merit to this argument. The Water Commission of the County of Hawai'i and the Department of Water Supply of the County of Hawai'i are not "agencies" of the State of Hawai'i. *See* Haw.Rev.Stat. § 26–4 ("Structure of Government"); rather, Hawai'i County is an independent municipal corporation. Moreover, pursuant to Haw.Rev.Stat. § 46–1.5(22), Hawai'i county has the power to sue and be sued in its corporate name, not as an agency of the State of Hawai'i.

NAIC also persuasively argues that the statutory exemption limits itself to the State of Hawai'i and its agencies, and this court should not expand it to include Counties or semi-autonomous subdivisions thereof. The maxim *nullum tempus,* "is generally considered to be an attribute of sovereignty only, and cannot be invoked by counties or other subdivisions or the state. Accordingly, in the absence of a statutory provision to the contrary, the statute of limitations is ordinarily available against counties in an action brought by them." 51 Am.Jur.2d *Limitation of Actions* § 418. With respect to this issue, one court has commented:

> [T]he privilege of nullum tempus does not, in the absence of express provision, extend to municipalities, counties or other political subdivisions unless such political subdivisions are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant.

*Altoona Area Sch. Dist. v. Campbell,* 152 Pa.Cmwlth. 131, 618 A.2d 1129, 1132 (1992). Accordingly, the court concludes that Plaintiffs cannot benefit from Haw.Rev.Stat. § 657–1.5. Plaintiffs are obligated to bring their claims in a timely manner within the applicable limitations period.

> statute as subject to the limitation period contained therein. No defense to any action brought by the State or any of it agencies shall be predicated upon the lapse of time.

21. NAIC alternatively argues that "[a]t least, the action accrued by December 8, 1992, when Plaintiffs sent its [sic] demand letter." NAIC's Motion for Summary Judgment at 11. However,

## C. *Gross Negligence*

██ In paragraph 15 of their First Amended Complaint, Plaintiffs assert a cause of action for gross negligence against NAIC: "NAIC ... knew or should have known of ... Thomas Kohoutek, Jeffrey Kohoutek, and Steven Conner's respective and collective intentional misconduct and were grossly negligent in failure to advise Plaintiffs of such misconduct upon discovering said misconduct, [or] advising Plaintiffs of the same." First Amended Complaint at ¶ 15.

NAIC again asserts a statute of limitations defense with respect to Plaintiffs' gross negligence claim. *See* Haw.Rev.Stat. § 657–7. In addition, NAIC moves for summary judgment on the gross negligence claim, arguing that there is no factual basis for it.

Neither party has sufficiently briefed the facts surrounding when Plaintiffs knew or should have known of their gross negligence claim. NAIC merely asserts that Plaintiffs' gross negligence claim accrued when it discovered or should have discovered the basis for its claim: "[Plaintiffs] should have discovered the claim in 1990 when the Water Commission received the unauthorized bond. The County could have easily learned that the bond was unauthorized then." NAIC's Motion for Summary Judgment at 11.[21] Plaintiffs respond to NAIC's assertions by stating that its gross negligence claim did not accrue until the end of 1994 or the beginning of 1995, when it suffered damages upon NAIC's repudiation of the bond. However, neither party offers any factual or legal support for their positions.

Furthermore, NAIC has failed to establish the absence of a genuine issue of material fact as to Plaintiffs' gross negligence claim. NAIC simply contends that it was not negligent in its actions when it learned of the "unauthorized Frandsen bond." This statement, however, presents the ultimate legal

NAIC fails to elucidate why December 8, 1992, the accrual date for a cause of action based on the breach of the construction contract, serves as the accrual date for Plaintiffs' gross negligence claim. To the contrary, the record does not reflect that Plaintiffs in fact knew of the possibility that Connor issued the performance bond without authority from NAIC as of December 8, 1992.

conclusion. Although Plaintiffs have not specifically argued that they have alleged sufficient facts to sustain a gross negligence claim against NAIC, in viewing all facts in a light most favorable to Plaintiffs, as this court must, the court DENIES NAIC's Motion for Summary Judgment with respect to Plaintiffs' gross negligence claim.

### D. Agency

■ Plaintiffs cross-move for partial summary judgment, arguing that this court should find as a matter of law, that Pacific Bonding had actual and apparent authority to issue the bond to Plaintiffs. Plaintiffs allege five facts in support of their motion. See Plaintiffs' Concise Statement of Fact [sic] in Support of Plaintiffs' Cross–Motion for Summary Judgment. First, on March 29, 1990, NAIC filed an Appointment of General Agent with the Insurance Division of the State of Hawai'i ("Certificate of Appointment") appointing Pacific Bonding, Inc., as general agent in the State of Hawai'i. See Exhibit "A" to Hee Decl. This publicly recorded document evidently vested Steven Conner and Pacific Bonding with "full power and authority to do and perform each and every act or transaction necessary to be done in the premises, as fully and completely as said insurer might or could do if personally present," and "ratif[ied] and confirm[ed] all acts" that Conner and Pacific Bonding might do in their capacity as general agents. Id.

Second, Plaintiffs allege that on April 10, 1990, the Insurance Division delivered to Conner copies of Pacific Bonding's General Agent's License and a Notice of Appointment of General Agent ("Notice of Appointment"), executed by NAIC. See Exhibits "C–3" and "C–4" to Hee Decl. Third, Plaintiffs further allege that on August 20, 1990, Conner issued a bond bearing the name of NAIC to Paul Frandsen & Associates in the amount of $1,007,565. See Exhibit "C–1" to Hee Decl. Fourth, according to Plaintiffs, Pacific Bonding's General Agent's License and Notice of Appointment were attached to the bond upon its delivery to the Plaintiffs, and Plaintiffs'

business manager inspected the documentation to insure that it was in good order.[22] Lastly, Plaintiffs allege that NAIC took no action to apprise Plaintiffs of knowledge or suspicions it possessed with respect to the fraudulent conduct of Conner, Pacific Bonding, or Jeffrey Kohoutek before 1994. See Plaintiffs' Concise Statement [sic] in Support of Cross–Motion for Summary Judgment at ¶ 6.

Plaintiffs primarily argue that Pacific Bonding had actual authority to issue the Bond because when NAIC filed the Certificate of Appointment, it preauthorized and ratified post hoc all acts of Pacific Bonding as agent. Plaintiffs further argue that when Conner, on behalf of Pacific Bonding, presented the General Agent's License and Notice of Appointment, he acted as an actual agent of NAIC. Plaintiffs claim that they relied upon these documents when entering the Contract. Accordingly, Plaintiffs conclude, "NAIC's liability under the Bond is straightforward." Plaintiffs' Memorandum in Support of Cross–Motion for Summary Judgment at 7.

Further, Plaintiffs argue that Pacific Bonding had apparent authority to issue the bond. While Plaintiffs admit that "as a general rule, the existence of apparent authority is a question of fact," id. at 8 (citations and internal quotations omitted), they nevertheless assert that under the circumstances presented here, there are sufficient indicia of apparent authority to permit this court to rule as a matter of law that NAIC is bound by Conner and Pacific Bonding's conduct. Both of Plaintiffs' arguments must fail.

Agency is a factual question which should not be decided at this stage in the proceedings. See Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1406 (9th Cir.1994) (whether one entity used another as its general agent is a question of fact) cert. denied, —— U.S. ——, 115 S.Ct. 1314, 131 L.Ed.2d 196 (1995). Here, the issue of agency is governed by Hawai'i law. The Hawai'i Supreme Court

---

**22.** Plaintiffs also state that Pacific Bonding's authority under the General Agent's License, Notice of Appointment and Appointment were effective as to the execution of the bond and the Contract, and that Pacific Bonding and Conner issued the bond to Frandsen under those premises. See Plaintiffs' Concise Statement [sic] in Support of Cross–Motion for Summary Judgment at ¶ 5. However, this is a legal conclusion, not a factual assertion.

has stated that whether agency exists is a fact-sensitive determination:

> Actual authority exists only if there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent to so act, and may be created by an express agreement or implied from the conduct of the parties or surrounding circumstances. Express or actual authority requires an *oral* or written agreement between the parties that the principal has delegated authority that the agent has accepted and that authorizes the agent to do certain acts.... Implied actual authority may arise as a necessary or reasonable implication required to effectuate some other authority expressly conferred by the principal. However, the focus is on the agent's understanding of his authority inasmuch as *the relevant inquiry is whether the agent reasonably believes, because of the conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him to so act.*
>
> • • • • •
>
> Apparent authority arises when "the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." The critical focus is not on the principal and agent's intention to enter into an agency relationship, *but on whether a third party relies on the principal's conduct based on a reasonable belief in the existence of such a relationship.* Apparent authority can occur under the following circumstances:
>
> (1) The principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority;
>
> (2) ... the third person knew of the principal's actions ... and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and
>
> (3) ... the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or the transaction executed by the agent does not bind the principal.

*Nelson v. Boone,* 78 Hawai'i 76, 82, 890 P.2d 313, 319 (1995) (quoting *Cho Mark Oriental Food v. K & K Int'l,* 73 Haw. 509, 517, 836 P.2d 1057 (1992)) (emphasis added); *see Chan,* 39 F.3d at 1406 (whether party acted as a general agent is a question of fact); *see also Hawai'i Housing Auth. v. Uyehara,* 77 Hawai'i 144, 150, 883 P.2d 65, 71 (1994) ("[T]he unauthorized act of an agent, *if ratified,* is as binding upon the principal as an original express grant of authority.") Whether an agency relationship existed, as Plaintiffs maintain, between Pacific Bonding (Conner) and NAIC, is a question of fact to be determined at trial.

For example, Defendants claim that whatever authority was granted to Conner in the Certificate of Appointment, a sub-agency agreement entered into by Conner on July 2, 1990, restricted that right and denied him any actual authority to issue the bond to Plaintiffs. Defendants also dispute that Conner possessed apparent authority. Defendants correctly point out that the appropriate inquiry is whether Plaintiffs reasonably relied on a statement or act by NAIC to conclude that it authorized Conner to issue the bond. They aver that Plaintiffs could not have relied on Appointment of General Agent when it accepted the Bond, as they did not see it until 1995. Defendants further argue that Plaintiffs did not reasonably rely on the Notice of Appointment or the General Agent's License, since neither document defined the scope of Conner's/Pacific Bonding's authority. Defendants also raise the issue of whether Plaintiffs had a duty of reasonable inquiry to determine if Conner in fact had authority to issue the Bond. Plaintiffs, not surprisingly, disagree with substantially all of Defendants' factual assertions and legal arguments.

In sum, because agency is a highly fact sensitive determination, the court cannot appropriately grant Plaintiffs' Motion for Partial Summary Judgment here. In viewing all facts in a light most favorable to Defendants, the court concludes that Plaintiffs fail to meet their initial burden of establishing that there are no genuine issues of material fact with respect to their agency claims. The court accordingly DENIES Plaintiffs' Cross-Motion for Partial Summary Judgment.

## II. SISNW's and Midwest Indemnity's Motion to Dismiss

██ SISNW and Midwest Indemnity move to dismiss Plaintiffs' First Amended Complaint as to the claims asserted against them on the ground that Plaintiffs fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). They argue that the only portions of Plaintiffs' First Amended Complaint which allege wrongdoing on the part of SISNW and Midwest Indemnity are paragraphs 13 and 15. Paragraph 13 states: "Defendants in their respective capacities as Surety, are jointly and severally obligated under the Bond, to fulfill the obligations of Frandsen under the Contract." Paragraph 15 reads in its entirety:

Plaintiffs are informed and believe that THOMAS KOHOUTEK, JEFFREY KOHOUTEK and STEVEN CONNER, intentionally deceived and defrauded Paul Frandsen with respect to their actual authority in securing the subject bond, all without Plaintiffs' knowledge, and that said fraudulent and deceptive acts were done willfully and intentionally and that Defendants NATIONAL AMERICAN INSURANCE COMPANY, SURETY INSURANCE SERVICES OF THE NORTHWEST, INC. and MIDWEST INDEMNITY CORPORATION knew or should have known of THOMAS KOHOUTEK, JEFFREY KOHOUTEK, and STEVEN CONNER'S respective and collective intentional misconduct and were grossly negligent in failure to advise Plaintiffs or such misconduct or upon discovering said misconduct, of [sic] advising Plaintiffs of the same.

First Amended Complaint at ¶ 15.

SISNW and Midwest Indemnity are correct in arguing that Plaintiffs' First Amended Complaint is devoid of any factual allegations that either SISNW or Midwest Indemnity had any duty either to supervise the activities of, or investigate the actions of, co-Defendants Thomas Kohoutek, Jeffrey Kohoutek and Steven Conner, or to advise Plaintiffs of any alleged misconduct of these individual Defendants. Plaintiffs allege only that Midwest Indemnity was "a Managing General Agent under an Agency Agreement" with SISNW. First Amended Complaint at ¶ 7. With respect to SISNW, Plaintiffs allege that it was the agent of Pacific Bonding, Inc., under a sub-agency agreement. *Id.* at ¶ 6. However, there are no allegations regarding Pacific Bonding, Inc., or its role in the matters alleged in the amended complaint. Moreover, Pacific Bonding, Inc., is not named as a defendant in the First Amended Complaint.

In response to SISNW's and Midwest Indemnity's Motion to Dismiss, Plaintiffs argue that their First Amended Complaint suffices under the liberal pleading requirements and that it contains sufficient allegations to state a claim. Moreover, Plaintiffs attempt to preclude dismissal by attaching to their opposition memorandum an "Agency Agreement" between NAIC and Midwest Indemnity, which states that Midwest Indemnity agrees to protect and indemnify NAIC from losses suffered or incurred as a result of or arising out of any contract of suretyship. *See* Hee Decl., filed June 14, 1996, at ¶ 3. Plaintiffs also contend that they have alleged fraud with sufficient particularity. In any case, Plaintiffs argue that Fed.R.Civ.P. 12(e) precludes dismissal because SISNW and Midwest Indemnity never moved for a more definite statement. Plaintiffs' arguments lack merit.

The court concludes that Plaintiffs fail to allege any factual basis for finding that SISNW or Midwest Indemnity owed any duty to Plaintiffs; Plaintiffs' conclusory assertions do not suffice here. Furthermore, Plaintiffs' recent production of a purported agency agreement between NAIC and Midwest Indemnity does not shield their First Amended Complaint from scrutiny. The contents of that agreement are not relevant to SISNW's and Midwest Indemnity's claim that the Complaint itself fails to set forth sufficient facts demonstrating that Plaintiffs may be entitled to relief. The court declines to treat SISNW and Midwest Indemnity's Motion to Dismiss as a summary judgment motion for the sole purpose of considering a document to which SISNW and Midwest Indemnity have not had an opportunity to respond.

██ Additionally, the court determines that Plaintiffs have not pled their allegations of fraud with sufficient particularity as re-

quired by Fed.R.Civ.P. 9(b).[23] Specifically, Plaintiffs have failed to clearly allege the identities of the parties to any misrepresentations, the time, place and specific content of the alleged false representations or fraudulent acts. *See Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986).

The court therefore agrees with SISNW and Midwest Indemnity that Plaintiffs have failed to set forth any allegations in the First Amended Complaint which connect them to the allegedly wrongful conduct set forth in paragraph 15 of the complaint. Moreover, Plaintiffs have failed to plead fraud with particularity as required under Fed.R.Civ.P. 9(b). Furthermore, contrary to what Plaintiffs argue, SISNW and Midwest Indemnity were not required to file a motion for a more definite statement under Fed. R.Civ.P. 12(e)[24] prior to filing the instant motion to dismiss.

Accordingly, the court GRANTS WITHOUT PREJUDICE SISNW and Midwest Indemnity's Motion to Dismiss for failure to state a claim.

### CONCLUSION

For the reasons stated above, the court DENIES Defendant NAIC's Motion for Summary Judgment, and DENIES Plaintiffs' Cross-Motion for Partial Summary Judgment. The court further GRANTS WITHOUT PREJUDICE SISNW's and Midwest Indemnity's Motion to Dismiss, and DENIES NAIC's Motion to Strike Plaintiffs' Supplemental Memorandum in Opposition to NAIC's Motion for Summary Judgment.

IT IS SO ORDERED.

---

**23.** Rule 9(b) provides in relevant part that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**24.** Fed.R.Civ.P. 12(e) provides in relevant part:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party *may* move for a more definite statement before interposing a responsive pleading.
*Id.* (emphasis added).