965 P.2d 783

**Florence ANDERSON, Plaintiff–Appellant,**

v.

**STATE of Hawai'i, Defendant–Appellee.**

**No. 21186.**

Intermediate Court of Appeals.

Oct. 7, 1998.

William C. McCorriston and Janel M. Yoshimoto, on the briefs for Plaintiff-Appellant.

Randall Y.K. Young, Deputy Attorney General, on the brief for Defendant-Appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

This case presents the issue of whether the Third Circuit Court properly granted Defendant–Appellee State of Hawai'i's (the State) motion for summary judgment on the issue of whether the statute of limitations provided for in Hawai'i Revised Statutes (HRS) § 662–4 (1993)[1] had applied and run when

1. Hawai'i Revised Statutes (HRS) § 662–4 (1993) provides:
   **Statute of limitations.** A tort claim against the State shall be forever barred unless action is

begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657–7.3 shall apply.

Plaintiff–Appellant Florence Anderson (Anderson) presented some evidence that the State may have committed a continuing tort against her property. We hold that the circuit court improperly granted the State's motion for summary judgment because material questions of fact existed that precluded the State from being entitled to judgment as a matter of law.

## I. INTRODUCTION

Anderson appeals the circuit court's November 7, 1997 final judgment (final judgment), entered upon its August 7, 1997 Order Granting Defendant State of Hawai'i's Motion for Summary Judgment (order granting summary judgment) and September 30, 1997 Order Denying Plaintiff Florence Anderson's Motion for Reconsideration of Order Granting Defendant State of Hawai'i's Motion for Summary Judgment (order denying motion for reconsideration).

Anderson contends that the circuit court erred in: (1) granting the State's June 10, 1997 motion for summary judgment, because a material question of fact existed regarding the application of HRS § 662–4; and (2) denying Anderson's August 25, 1997 motion for reconsideration.

We conclude that the circuit court erred in granting summary judgment in favor of the State because the State failed to meet its requisite burdens of proof on summary judgment and, therefore, was not entitled to judgment as a matter of law. Accordingly, we vacate the circuit court's final judgment and remand for proceedings consistent with this opinion.

2. Plaintiff–Appellant Florence Anderson (Anderson) explains, and Defendant–Appellee State of Hawai'i (the State) does not dispute, the following:

> 2. [Pā'iakuli Stream] originates in watershed land owned by [the State] and traverses Hawaiian Home Lands property and the Puu Nani residential subdivision before flowing under the Mamalahoa [Māmalahoa] Highway through a culvert. From there, the stream flows over several properties, including that belonging to [Anderson], before emptying into Paiakuli [Pā'iakuli] Pond;

## II. BACKGROUND

This case involves the alleged diversion of Pā'iakuli Stream (Pā'iakuli Stream or "the stream") from its State-maintained ditch reservation onto the 2.68 acre South Kohala District property (the subject property) of Anderson and her family.[2] For approximately seventy-five years, Pā'iakuli Stream has run through the Anderson property, initially in a State-owned ditch reservation.

It is undisputed that, in 1969, Anderson's predecessor in interest (her mother) formally complained to the Department of Land and Natural Resources (the DLNR) that Pā'iakuli Stream was being wrongfully diverted by the State onto the subject property from its State-maintained ditch reservation and eroding the subject property and endangering Anderson's family home. The DLNR investigated the complaint and concluded that "there was nothing to indicate that the stream had been diverted from its natural course."

In 1988, Anderson sent a similar complaint to the DLNR. The DLNR investigated and, in 1989, issued a report that found, in relevant part:

> It is surmised from [relevant information] that at one time the location of the stream course may have approximated the alignment of the ditch reservation.
>
> The stream ... presently is located outside of the ditch reservation in privately owned lands, including the Anderson property. Mrs. Anderson wishes to have the stream rerouted to fall within the reservation, which she believes is the former stream location.
>
> . . . .

3. The State had, as of 1989 and for more than 75 years prior thereto, maintained a "ditch reservation" for Paiakuli [Pā'iakuli] Stream. The ditch reservation traversed several properties to the east and south of the Anderson property, as well as a small portion on the southeast corner of the Anderson property[.]

We note that the relevant facts and information regarding the instant case were taken largely from properly-admitted exhibits and affidavits attached to the State's June 10, 1997 motion for summary judgment.

The photos also show what DLNR staff had observed, that an obstruction within the watercourse no longer allows streamflow to continue within the ditch reservation and causes all flows to be diverted through the Anderson property. . . .

The continual streamflow over the years has resulted in a sizable waterway which intrudes upon [Anderson's] property and now seriously affects the use of her cesspool, causes cracks to appear on her house walls and ceilings due to settling house footings, and denies her full use of her property.

The DLNR report recommended that the State take the following course of action:

### RECOMMENDATIONS AND IMPLEMENTING ACTIONS

1. Based on the investigation conducted and its evaluation of the situation, DLNR recommends that:

   a. Paiakuli [Pā'iakuli] Stream be retained in its present alignment.

   b. The sale of the State's 20–foot–wide ditch reservation as a remnant property be resumed to completion.

   c. The State acquire an easement over private properties traversed by the present stream alignment. . . .

   d. The State construct certain channel works to alleviate stream erosion presently occurring in the Anderson property. (Such works should be limited to that necessary to curtail current problems, but might include a means of access to preserve the utility of the property bisected.)

2. If Mrs. Anderson and the other affected property owners find the above recommendations acceptable, DLNR can proceed to take the following actions:

   a. Acquire the necessary easements;

   b. Effect emergency measures, such as remedial streambank stabilization and house foundation repair, to pre-vent further damage to the Anderson property;

   c. Secure legislative appropriations through the normal capital improvements program budget process to plan, design, and construct the necessary works of improvement.

In other words, the DLNR concluded that it would be necessary for the State to obtain a new easement, rather than re-divert the stream back into the original ditch reservation, because "the retention of the present stream alignment [is] a reasonable course to pursue, under the circumstances. Also, it appears to be the least disruptive and least costly of the solutions available."

By letter dated January 7, 1991, the State subsequently informed Anderson:

[W]e need to acquire an easement from you before initiating remedial work on the stream. We cannot use State funds to do improvements on private lands, which is what the stream crossing your land now is. Once we acquire an easement, we can then justify using State monies to do the improvements.

Anderson declined to grant the easement by responding through her attorney on July 26, 1991: [3]

[D]ue to the fact as expressed in your letter that you cannot use State funds to do improvements on private land, Ms. Anderson chooses to not grant an easement to the State, but insists the State reopen the water way along its older course. That way the State already has easements existing and Ms. Anderson's land can be restored to its original state. She needs a response from the State as quickly as possible as she notes continuing deterioration to her property and improvements from the current ditch overflow.

After this correspondence, the State allegedly received no further communication from Anderson.

In 1992, Anderson apparently attempted to fill the portion of the stream running through

---

3. The attorney who represented Anderson in the complaint process was not the same attorney who represented her at trial or on appeal.

her property, which action the State Department of Public Works halted.

Anderson filed her complaint in the instant case on April 2, 1996,[4] alleging that the State owed her a duty to properly maintain the ditch reservation, and had "intentionally, wilfully, recklessly and/or negligently breached said duty, allowing the natural waterway to become obstructed and causing Paiakuli [Pā'iakuli] Stream to be diverted onto and through [Anderson]'s property." She further claimed that "[the State], through the DLNR, has sought repeatedly over the years to placate [Anderson] and forestall her commencement of legal action by indicating its intent to remedy the diversion of Paiakuli [Pā'iakuli] Stream. All such promises have gone unfulfilled." Consequently, Anderson sued the State under HRS chapter 662 (the State Tort Liability Act), for (1) trespass, and (2) promissory estoppel. The State filed its answer to Anderson's complaint on September 10, 1996.

On June 10, 1997, the State filed its motion for summary judgment, arguing that Anderson had failed to file her complaint within the two-year statute of limitations provided for in HRS § 662-4. *See supra* n. 1. In her reply memorandum, Anderson argued that the statute of limitations was tolled because the State's conduct constituted "a continuing course of tortious injury." Anderson argued that the injury was not a "permanent injury," which would begin the limitations period, but a "continuing injury," which tolled the statute.

At the hearing for the motion, the circuit court addressed the statute of limitations question in the following manner:

THE COURT: Good morning.

[Anderson's attorney], my concern is that you don't have an affidavit or other materials that the Court can consider in determining whether or not there are genuine issues of material fact.

[Anderson's attorney]: Um, well, I think we—we felt in reviewing the motion for

summary judgment, that essentially addressed legal issues. The question of, uh, of the correspondence with the State and the earlier efforts to, uh, effect a settlement were not really disputed. What, um, and their motion did not dispute our contention that the diversion of water is continuing.

Um, and so what was at issue was that the legal effect of the—

THE COURT: But the records seem to indicate—the materials from the State seem. to indicate that, um, there is no diversion. That's my impression. No?

[State's Attorney]: Your Honor, I could respond to that in due course.

THE COURT: Okay.

[Anderson's Attorney]: Uh, I don't think the question of—of whether there's a diversion was being argued in the motion. I think the question that their motion was granted solely on the question of, uh, of, uh, the statute of limitations and whether—

THE COURT: Okay.

[Anderson's Attorney]:—the accrual—

THE COURT: Maybe that's true.

[Anderson's Attorney]:—was based on— or whether the accrual should be determined on the basis of when these, uh, the purported agreement or proposed agreement had fallen through.

THE COURT: My impression, though, is you're—the State is—tell me if I'm wrong, but the State is saying that the water follows a natural water course.

[State's Attorney]: Um, Your Honor, we attached an exhibit to our motion for summary judgment. It was an investigative report which was done by the DLNR engineers back in 1989.

Um, the report concluded that sometime in the 45, 50 years, the stream had shifted course, but they could not say that it was a result of a construction, or diversion, or a dam—

---

4. The State alleges that it did not receive any communication from Anderson until the filing of her complaint on April 2, 1996. At oral argument on the motion to dismiss, the State conceded that in early 1996, the State Department of

Land and Natural Resources (the DLNR) conducted another site visit; "it was, in a sense, a follow-up of the earlier 1989 study which the DLNR did."

THE COURT: Okay.

The circuit court then heard brief arguments regarding the alleged diversion and source of diversion of Pāʻiakuli Stream, and concluded:

THE COURT: Okay. Um, unless there's some other request, the Court, based upon the record before me, is gonna grant the summary judgment. Um, at this point, um, there is no factual showing as to the existence or the reason for at least the alleged diversion, and there's no, um, evidence presented by the nonmoving party in regard to that and in regard to whether, um, the diversion, however characterized, is something permanent in nature or not, and because of that, uh, I think I have to grant summary judgment.

On August 7, 1997, the court issued its order granting the State's motion for summary judgment.

On August 18, 1997, Anderson filed a motion for reconsideration of the circuit court's grant of summary judgment, arguing that the State had not proved when Anderson's claim had accrued or whether the statute of limitations had run. At the hearing on the motion for reconsideration, the parties more fully argued the merits of the statute of limitations question. The circuit court then denied the motion, finding:

THE COURT: Uh, I'm going to deny the motion.

. . . .

Um, during the hearing on the [summary judgment] motion, I inquired of [Anderson's] counsel as to the reason for the alleged diversion of water. His response was he did not know.

And based upon the record and counsel's response, I granted summary judgment because if [Anderson] could not establish the cause for the diversion or alleged diversion, [Anderson] could not raise as a— as a genuine issue of fact—genuine issue of material fact that the alleged injury was not permanent in nature; and, more fundamentally, I was concerned that, uh, if [Anderson] did not know the cause of the diversion, how could [Anderson] even state a claim for relief?

Now, on the motion for reconsideration, um, what has been—been made more clear, perhaps, is, um, [Anderson's] contention regarding the existence of an obstruction.

At this point in time, it's still not clear what the nature of that obstruction is, but, apparently, it is the same, uh, thing which has caused the alleged physical injury to the [Anderson's] land over 30 or more years.

That being the case, if that is true, then the, um, condition must be characterized as permanent in nature, and the, um, statute of limitations would have expired a long, long time ago so I don't see any reason to change my initial decision.

Both the State's motion for summary judgment and Anderson's motion for reconsideration, therefore, were based upon the circuit court's finding that Anderson could not show what caused the diversion, and, thus, apparently lacked support for her argument that the alleged injury constituted a continuous tort. The court issued its order denying Anderson's motion for reconsideration on September 30, 1997.

Final judgment was entered on November 7, 1997. Anderson filed a timely notice of appeal on December 8, 1997.

## III.  DISCUSSION

The sole issue we address on appeal is whether the circuit court properly granted the State's motion for summary judgment. The dispositive issues are: (1) whether the State showed that no genuine issue of material fact existed; and thus (2) whether the State was entitled to judgment as a matter of law. The determinative legal inquiry concerning the second issue is whether the alleged diversion of a State-owned and maintained stream onto a private landowner's property constitutes a permanent or a continuing tort.

We conclude that the State did not meet its burden of proof on summary judgment and was not entitled to judgment as a matter of law. Accordingly, we vacate the circuit court's final judgment and remand for proceedings consistent with this opinion.

A. *Standard of review.*

Our court has previously examined, at length, the standard of review for a summary judgment motion, stating:

> Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> *The burden is on the party moving for summary judgment ... to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law.* This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.
>
> *The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, and any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party.*
>
> ....

On appeal, an award of summary judgment is reviewed under the same standard applied by the trial court....

*GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521–22, 904 P.2d 530, 535–36 (citations, ellipses, quotation marks, and brackets omitted) (emphases added), *aff'd,* 80 Hawai'i 118, 905 P.2d 624 (1995); *see also* Hawai'i Rules of Civil Procedure (HRCP) Rule 56.

B. *The State did not meet its burden of proof.*

A review of the record shows that the State did not meet its well-settled burden of proof to show that no genuine issue of material fact existed and, therefore, it was not entitled to judgment as a matter of law.

At the hearing on the motion for summary judgment, the circuit court failed to address the question of whether Anderson's complaint was filed within the statute of limitations provided by HRS § 662–4. Instead, the court raised questions as to the existence of, or reason for, the alleged diversion of water onto Anderson's property. The court also noted that Anderson, as the non-moving party, failed to present any evidence with regard to whether the diversion was permanent or not. Therefore, the court reasoned, it had to grant summary judgment.

At the hearing on Anderson's motion for reconsideration, the court reasoned that the nature of the obstruction was unclear, but that apparently it was the same obstruction that had caused alleged physical injury to Anderson's land for thirty or more years. The court concluded that the condition, therefore, must be characterized as permanent in nature, and that the statute of limitations had expired. We conclude that the circuit court erred for the reasons detailed below.

1. *The statute of limitations.*

First and foremost, the court failed to properly address the sole dispositive issue, which was whether HRS § 662–4 applied and had run. The State's motion for summary judgment was based solely on the grounds that the time period provided under the applicable statute of limitations had expired.

Neither party disputes that HRS § 662–4 is the applicable statute of limitations. HRS § 662–4 provides that "[a] tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues[.]"

Our courts have interpreted the word "accrues" under HRS § 662–4 to mean that the statute does not begin to run "until the plaintiff knew or should have known of the defendant's negligence." *Waugh v. University of Hawaii*, 63 Haw. 117, 127, 621 P.2d 957, 966 (1980) (quotation marks and citation omitted). The Hawai'i Supreme Court later interpreted a similar statute of limitations, HRS § 657–7 (1993),[5] to mean that a claim against the State "accrues" when the claimant "discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty [to the claimant]; and (3) the causal connection between the violation of the duty and the damage." *Hays v. City and County of Honolulu*, 81 Hawai'i 391, 396, 917 P.2d 718, 723 (1996) (citation omitted) (interpreting HRS § 657–7.3 (1993) and HRS § 657–7).

In the instant case, under either test, the two-year statute of limitations period had run because it is undisputed that Anderson had actually discovered the above factors, at the latest, in July 1991, when Anderson's attorney wrote the State denying its offer to purchase an easement from her.

■ However, Anderson argues that the statute of limitations was tolled because the State's violation constitutes a "continuing" tort, which falls under an exception to HRS § 662–4.

### 2. Defining a "continuing" tort or trespass.

Generally, a continuing tort is defined as one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty.

54 C.J.S. *Limitations of Actions* § 177 (1987) (footnote omitted). Similarly, and more applicable to the instant case, is the *Restatement (Second) of Torts'* definition of a continuing trespass:

*b.* *Continuing trespass.* The actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and … confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass. . . .

Illustration:

1. A, without B's consent or other privilege to do so, erects on his own land a dam which backs up water on B's land. *This is a trespass, which continues so long as A maintains his dam in such a way as to flood B's land.*

*c.* *Effect of actor's inability to remove the thing.* Since the conduct of the actor in placing the thing on the land is tortious, his responsibility for its presence on the land continues … although through subsequent conduct on his [or her] part it has now become impossible or impracticable for him [or her] to terminate the intrusion on the other's land.

*Restatement (Second) of Torts* § 161 cmts. b. and c. (1965) (emphasis added); *see also* L. Jayson and R. Longstreth, *Handling Federal Tort Claims: Administrative and Judicial Remedies* § 14.03[4] (1998) (interpreting the same). Thus, it has been stated that

[i]f the injury is of a continuing nature, *such as a prolonged flooding of land,* the owner may treat the claim as one that

---

**5.** HRS § 657–7 (1993), in the HRS chapter on limitations of general tort actions, provides:

**Damage to persons or property.** Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13.

keeps accruing from time to time and present periodic claims as the damage persists, or may treat the entire sequence of events as the occurrence from which the claim arose and compute the time for claims presentation from the last event in the series.

A. Van Alstyne, *California Government Tort Liability Practice* § 6.43 (Laurence M. Freiser, et. al., 3d ed.1992) (citations omitted) (emphasis added).

This continuing-tort exception is generally recognized because

> usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.

*Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749, 754 (1993) (holding that a claim for intentional infliction of emotional distress was a continuing tort for purposes of a statute of limitations) (quoting *Page v. United States*, 729 F.2d 818, 821–22 (D.C.Cir.1984)) (quotation marks omitted).[6]

█ Thus, generally, a continuing tort is a tortious act that occurs so repeatedly that it can be termed "continuous," such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run, because the tortious conduct is ongoing.[7] The example of the flooding of one's property, as in the instant case and as illustrated by the *Restatement (Second) of Torts*, is a good one.

**6.** We quote *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749, 754 (1993), for its excellent description of the policy reason behind the continuing-tort exception. However, we expressly decline to comment on or in any other way approve of its holding.

**7.** We note that the State urged the circuit court, as well as this court, to adopt the rule set forth in *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), which rejected the application of the continuing-tort exception in a medical malpractice situation. In its open-

### 3. *Relevant case precedent.*

The Hawai'i Supreme Court adopted the continuing-tort exception to a statute of limitations in 1935, but has never revisited the issue. In *Wong Nin v. City and County of Honolulu,* 33 Haw. 379, *rehearing denied,* 33 Haw. 409 (1935), the Hawai'i Supreme Court held:

> There is a clear distinction recognized by the courts between what is called a permanent injury and one that is continuing. From the averments of the complaint in this case it would appear that the initial injury, namely, the destruction of or damage to plaintiff's growing crop of taro [by the continuous diversion of water from his land] constituted a permanent injury, respecting which a right of action accrued at the time it was sustained and the statute of limitations of course began to run from the date of the injury *but the subsequent injuries caused by the continued diversion of water to the time plaintiff instituted his action were a continuing injury and so much of the damage as may have been sustained within the period of the statute is not barred.* "A continuing diversion of a natural watercourse whereby a lower riparian owner is deprived of its use [is] a continuing injury not referable exclusively to the time when the diversion first occurred; and in such a case a recovery may be had for all damages accruing within the statutory period before the action, although not for damages accrued before that period."

*Id.* at 386 (quoting 37 C.J. 894) (other citation omitted) (emphasis added); *see also Woodland v. Lyon,* 78 Idaho 79, 298 P.2d 380, 381 (1956) (citing *Wong Nin* and holding that the diversion of a stream that deprived a

ing brief, the State extended *Kubrick* to Hawai'i cases in order to show that Anderson's claim had already accrued. However, the State's reliance on *Kubrick* is misplaced. Subsequent federal cases have rejected *Kubrick*'s application to cases involving a continuous tort. *See Wehrman v. United States*, 830 F.2d 1480, 1486 (8th Cir. 1987) (stating that *Kubrick* does not apply where the tortious conduct is of a "continuing nature"); *Gross v. United States*, 676 F.2d 295, 300 (8th Cir.1982) (similarly rejecting *Kubrick*). We similarly reject its application here.

landowner of water constituted a continuing tort). *Wong Nin* established that Hawai'i recognizes a continuous-injury exception to a statute of limitations.

However, *Wong Nin* addressed the issue of whether a riparian land owner was entitled to water from a stream that the city had wrongfully diverted *from* his property such that the wrongful diversion created a continuous *injury*, not whether the wrongful diversion *onto* one's land (i.e., flooding) constituted a continuous tort. Since *Wong Nin*, our courts have not expanded *Wong Nin*'s holding to include flooding of one's property.[8]

Other jurisdictions, however, have addressed this issue. In *Holdner v. Columbia County*, 51 Or.App. 605, 627 P.2d 4 (Ct.App. 1981), a landowner sued the city for damage caused by water and other substances running intermittently from a county road and onto the landowner's property. The landowner knew of the damage in 1974 or early 1975 and notified the city, but the city did nothing to cure the problem. *Id.* at 6. When the landowner filed suit in December 1977, the city argued that the suit was time-barred by a two-year statute of limitations.

The Oregon Court of Appeals held that the "ongoing negligent conduct and the resulting nuisance or trespass to plaintiff's land would appear to constitute a 'continuing tort[.]'" *Id.* at 9. The court adopted the reasoning of a Ninth Circuit case, *Reynolds Metals Co. v. Yturbide*, 258 F.2d 321 (9th Cir.), *cert. denied*, 358 U.S. 840, 79 S.Ct. 66, 3 L.Ed.2d 76 (1958), by holding that "'[w]here the tort is continuing, the right of action is continuing. The rule that the statute runs from the last

date of the continuous negligent [act] is just and equitable.'" *Holdner*, 627 P.2d at 8 (quoting *Yturbide*, 258 F.2d at 333) (asterisks omitted). The Oregon court thus reasoned that "when a continuing tort is involved, a notice of claim filed any time during the continuance of the conduct ... is necessarily timely." *Id.* at 9.

Similarly, in *Walton v. City of Bozeman*, 179 Mont. 351, 588 P.2d 518 (1978), a landowner sued the city for damage to his property from flooding and pollution caused by the city's repair of a storm sewer. The landowner repeatedly notified the city of the damage, to no avail. Thus, approximately seven years after the injury occurred, he filed suit. *Id.* at 520.

The city argued that the suit was time-barred by a two-year statute of limitations. *Id.* at 521. The Montana Supreme Court disagreed and held that the statute of limitations had not run on the damage done to the landowner's property. *Id.* The court held that "[w]here the injury is not complete so that the damages can be measured at the time of the creation of the nuisance in one action, but depends upon its continuance and the uncertain operation of the seasons or of the forces set in motion by it, the statute will not begin to run until actual damage has resulted therefrom." *Id.* (citation and quotation marks omitted). The court concluded that "because at all times, the City could have ... tak[en] curative action ... [the damage] cannot be deemed to be a permanent nuisance as of the creation date," and thus was a continuing injury against which the statute of limitations had not run. *Id.*

---

8. The State argues the applicability of several Hawai'i cases that barred actions due to the running of a statute of limitations. *See Russell v. Attco, Inc.*, 82 Hawai'i 461, 463–64, 923 P.2d 403, 405–06 (1996) (citing *Hays, infra*, and holding that where the plaintiff sustained an injury after tripping over a plastic liner, the "discovery rule" did not toll the statute of limitations); *Hays v. City and County of Honolulu*, 81 Hawai'i 391, 395–96, 917 P.2d 718, 722–23 (1996) (citing *Kubrick*, 444 U.S. at 117–19, 100 S.Ct. 352, and holding that where a swimmer sued the city for an accident that occurred when he dove into the water at city-maintained beach, his claim was time-barred); *Waugh v. University of Hawai'i*, 63

Haw. 117, 127–28, 621 P.2d 957, 966 (1980) (holding that where a university professor returned from sabbatical to find his personal property gone and sued the university for its return, the statute of limitations barred his tort claims); *Basque v. Yuk Lin Liau*, 50 Haw. 397, 399, 441 P.2d 636, 637 (1968) (holding that a cause of action for damage caused by a leaking sewer pipe was barred by the statute of limitations). However, in none of these cases was the court asked to decide whether the alleged injury was permanent or continuous. Thus these cases, like *Kubrick, supra* n. 7, are not determinative. Furthermore, few of these cases involved a tort that could be classified as "continuing."

250

However, other courts, while recognizing the well-established continuing-tort exception to a statute of limitations, have disagreed that damage done to property by water or other continuing injuries to property constitutes a continuing tort. *See Rygg v. United States*, 334 F.Supp. 219, 220 (D.N.D.1971) (summarily holding that damage to farmland due to flooding caused by the government was not a continuous tort). As recognized by one federal district court, "rulings regarding the continuing tort theory seem to run the full spectrum." *Piccolini v. Simon's Wrecking*, 686 F.Supp. 1063, 1077 (M.D.Pa.1988) (citations omitted). Thus, "[t]he issue of whether an injury is permanent [or continuous] is not easily resolved." *Id.*

■ However, we must adopt that line of reasoning consistent with the Hawai'i Supreme Court's holding in *Wong Nin.* We conclude that those cases which hold that the act of diverting water onto one's property, causing continuous property damage, which continuous act tolls the statute of limitations, are in accord with the reasoning in *Wong Nin.* As in *Wong Nin*, this line of reasoning recognizes that a continuous tortious act should not be subject to a limitations period until the act ceases. The doctrine also recognizes that though the statute of limitations is tolled by a continuing tortious act, "in such a case[,] a recovery may be had for all damages accruing within the statutory period before the action, although not for damages accrued before that period." *Wong Nin*, 33 Haw. at 386 (quoting 37 C.J. 894) (other citations omitted). We thus adopt the continuing-tort exception.

■ Therefore, where an actor continuously diverts water over which he or she has direct control onto another's land, and the diversion causes continuous and substantial damage to that person's property and the actor knows of this damage, such an act *may* present evidence of a continuous tort.

### 4. *Application to facts.*

■ In the instant case, it appears that summary judgment was not proper because the exhibits attached to the State's motion for summary judgment, including the 1989 DLNR report, clearly showed that several material questions of fact exist, including: (1) when the diversion occurred, which would go to the running of the statute of limitations; and (2) the nature of the diversion, which would go to the issue of whether the diversion was continuous or permanent.[9] The court's questions as to the existence of or reason for the alleged diversion, or the nature of the obstruction, may be relevant to the issue of the State's liability, or lack thereof, but these questions, if viewed in the context of the liability issue, were premature because the State's motion for summary judgment was not based on that issue.

Moreover, it appears that Anderson presented *some* evidence that the diversion of water from the State's original ditch reservation may have constituted a continuing tort that would toll the statute of limitations. The DLNR's 1989 report states that water was diverted from the State's ditch reservation and had been continually encroaching upon and causing damage to Anderson's property for several years. The State does not dispute this and, in fact, supplied the circuit court with the DLNR report.

However, in the instant case, we do not determine whether the State's alleged acts constituted a continuing tort. But it is clear that the State failed to show that there were no material questions of fact regarding whether the alleged violation was permanent or continuing. Because relevant and material questions of fact exist, the circuit court could not properly determine whether HRS § 662–4 had applied and run. The State, therefore, was not entitled to judgment as a matter of law. Accordingly, we vacate the circuit court's final judgment and remand for proceedings consistent with this opinion. Because we have held that summary judgment was not properly granted, we need not

9. Though the issues argued by the parties focused on Anderson's claim of trespass, we note that material questions of fact also remain regarding Anderson's claim of promissory estoppel, such as when the alleged "repeat[ed] promise[s] to remedy the damage caused by the diversion of Paiakuli [Pā'iakuli] Stream" occurred.

address the issue of whether the circuit court improperly denied Anderson's motion for reconsideration.