RONALD P. WEIDENBACH and ESTRALITA N. WEIDENBACH, Plaintiffs-Appellants,
v.
KOOLAU AGRICULTURAL CO., LTD.; FRED E. TROTTER; VALERIE L. MENDES; PACIFIC-ASIAN, INC., Defendants-Appellees, and
DOE CORPORATIONS 1-5; and DOE PARTNERSHIPS 1-5, Defendants
No. 24315
Intermediate Court of Appeals of Hawaii.
March 3, 2009.
On the briefs:
John M. Cregor, Jr., Stephen D. Tom, Marie E. Riley, for Plaintiffs-Appellants.
Wesley H.H, Ching, Sheree Kon-Herrera, (Fukunaga Matayoshi Hershey Ching & Kop LLP), for Defendants-Appellees.

MEMORANDUM OPINION
WATANABE, Presiding Judge, FOLEY and NAKAMURA, JJ.
Plaintiffs-Appellants Ronald P. Weidenbach and Estralita N. Weidenbach (Weidenbachs) appeal from the Judgment entered in favor of Defendants-Appellees Koolau Agricultural Co., Ltd. (Koolau Ag), Fred E. Trotter (Trotter), Valerie L. Mendes (Mendes), and Pacific-Asian, Inc. (Pac-Asian) (collectively referred to as Koolau Group) in the Circuit Court of the First Circuit (circuit court) on May 1, 2001.[1] Prior to entry of the Judgment, the circuit court granted Koolau Group's Motion for Summary Judgment (Motion for SJ) and denied Weidenbachs' Motion for Leave to File First Amended Complaint and Jury Demand (Motion to Amend Complaint).
On appeal,[2] Weidenbachs contend the circuit court erred in granting summary judgment in favor of Koolau Group on the issue of statute of limitations and in denying Weidenbachs' Motion to Amend Complaint to add an allegation of fraud that "would not be barred by the statute of limitations."[3]
We disagree with Weidenbachs' contentions and affirm.

I. BACKGROUND
This case involves breach of contract and tort causes of action alleged by Weidenbachs, aquaculture entrepreneurs, against Koolau Group, the lessors of the property on which Weidenbachs launched their venture. The key issues on appeal are the granting of summary judgment and the denial of leave to amend the complaint, both involving statute of limitations issues.
Weidenbachs filed their complaint on December 15, 1998, in which they stated that sometime in late 1984 they were approached by Trotter, who proposed a joint venture and sublease arrangement for the development of an aquaculture farm (Farm) in Punalu'u Valley on land (Property) that Trotter and/or Koolau Ag leased or were soon to lease from Bishop Estate. Weidenbachs alleged that following negotiations, they and Koolau Group "came to an oral agreement on the material terms of an arrangement" in about May 1986 whereby, among other things, Trotter/Koolau Ag would: sublease to Weidenbachs the Property for a term of thirty-five years; provide water from the Punalu'u ditch diversion system for the Farm's operation (initially free with an eventual rate at or slightly above the actual cost of operating the ditch system); provide an access area to Punalu'u Stream for Weidenbachs' own future pumping station; allow installation of a freshwater well; excavate ten ponds for the raising of aquatic life; maintain the Punalu'u Stream levee for flood protection of the land; construct a single-family dwelling on the Property at a cost of $14,000 with Weidenbachs' labor assistance; and "perform other obligations necessary to the successful operation of an aquaculture farm." Weidenbachs agreed to pay Koolau Group sublease rents and development fees.
Although the parties agreed that a written sublease was necessary, Trotter indicated that he needed to resolve the master lease with Bishop Estate before finalizing the sublease. Weidenbachs alleged that in reliance upon the agreement, they undertook the time and expense of winding down their existing aquaculture venture in Waimanalo, preparing for the move, and obtaining the necessary permits and engineering plans for the Farm.
In their complaint, Weidenbachs alleged that Koolau Group breached the agreement by, among other things: failing to clear and grub the Property and construct the ponds in a timely manner; failing to construct four of the ponds; disrupting and diverting essential water, resulting in substantial aquaculture losses; overcharging for water; improperly excavating and converting soil from pond berms; improperly diverting electricity; charging rents for the Property and Weidenbachs' rental residence in excess of that agreed upon; improperly and falsely billing Weidenbachs for services and equipment rental for construction of the ponds; improperly and illegally altering Punalu'u Stream, berms, and levies causing damage that resulted in a loss of fish; improperly encroaching on the Property by fencing off Weidenbachs' land; trespassing on the Property by grazing Koolau Group's cattle, dumping rubbish, and burying cattle carcasses thereon; endangering the safety of persons by placement of high-voltage electric fences around the Farm and berms; damaging the pond berms, divider nets, and fish cases by grazing of cattle; and vandalizing or destroying, or permitting others to vandalize or destroy, the fish hatchery equipment.
Koolau Group filed its amended answer on January 10, 2000, essentially denying all of the substantive claims and raising the defenses of, inter alia, statute of limitations and laches.
Weidenbachs filed their pretrial statement on June 23, 2000, in which they characterized their case as a "civil action for damages by a commercial tenant against a landlord." Koolau Group filed a responsive pretrial statement on August 22, 2000.
On October 30, 2000, Koolau Group filed its Motion for SJ. In their February 7, 2001 memorandum in opposition to the Motion for SJ (Memorandum Opposing SJ), Weidenbachs stated: in December of 1992, while Weidenbachs were removing their fish hatchery from the Property, Koolau Group's staff "deliberately broke up large sections of the fish hatchery while [Weidenbachs were] trying to disassemble it for transport"; "sometime thereafter [Weidenbachs] learned that [Koolau Group] had converted the Tilapia [left in the ponds] to their own use... and were selling [Weidenbachs' Tilapia] to [Weidenbachs'] own buyer on the commercial market"; and "[d]uring this period of time, [Koolau Group] significantly increased their stream diversion efforts."
After a hearing on February 15, 2001, the circuit court granted the Motion for SJ and filed its order on March 27, 2001. On April 4, 2001, Weidenbachs filed a motion for reconsideration of the order granting summary judgment (Motion for Reconsideration); the circuit court entered its order denying the motion on May 1, 2001.
On March 21, 2001, Weidenbachs filed their Motion to Amend Complaint. Weidenbachs sought to add to their complaint, inter alia, allegations that (1) Koolau Group had failed to construct a personal residence for Weidenbachs on the Property and (2) Koolau Group had defrauded Weidenbachs, among others, and had been unjustly enriched at Weidenbachs' expense, by offering Weidenbachs a long-term sublease, with no intention of honoring the sublease, in order to wrongfully obtain excessive allocations of surface and ground water from the State of Hawai'i so that Koolau Group might sell the water to permit "the development of arid land in leeward Oahu in which [Koolau Group has] an economic interest." Weidenbachs stated in their proposed complaint that they "did not become aware of the fact that they had been the victims of fraud until January 2001, when Plaintiff Ronald Weidenbach did research on [Koolau Group] in the offices of various State of Hawaii and City and County of Honolulu water authorities and learned of the water banking." Weidenbachs explained in their memorandum in support of the motion that Koolau Group (1) had the intention to bring "several large volume water users" onto the property in order to establish an "existing water use" under the new state water code; (2) made several false statements for why a promised residence was not constructed on the Property; (3) engaged in a scheme to drive off most of Koolau Group's other "high water usage" tenants; and (4) brokered a "water banking" scheme to divert and credit water allocations to housing developments in leeward Oahu. By order filed May 1, 2001, the circuit court denied the Motion to Amend Complaint.
The circuit court entered the Judgment in favor of Koolau Group on May 1, 2001, and Weidenbachs timely appealed.

II. STANDARDS OF REVIEW

A. Award of Summary Judgment
This court reviews a trial court's grant of summary judgment de novo. O'ahu Transit Servs., Inc. v. Northfield Ins. Co., 107 Hawai'i 231, 234, 112 P.3d 717, 720 (2005). The standard for granting a motion for summary judgment is well settled:
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, [this court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Price v. AIG Hawai'i Ins. Co., 107 Hawai'i 106, 110, 111 P. 3d 1, 5 (2005) (original brackets and citation omitted).
Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

B. Denial of Leave to Amend Complaint
This court reviews a denial of leave to amend a complaint under [Hawai'i Rules of Civil Procedure (HRCP)] Rule 15(a) or (b) under the abuse of discretion standard. Gonsalves v. Nissan Motor Corp. [in Hawaii, Ltd.], 100 Hawai'i 149, 158, 58 P.3d 1196, 1205 (2002) (regarding Rule 15(a)); Hamm v. Merrick, 61 Haw. 470, 473, 605 P.2d 499, 502 (1980) (regarding Rule 15(b)).
The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. Chun v. Bel. of Trs. of the Employees Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P. 3d 339, 353 (2005) (citations omitted).
Kamaka, 117 Hawai'i at 104, 176 P.3d at 103.

C. Abuse of Discretion
An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

III. DISCUSSION

A. Summary Judgment
The circuit court granted summary judgment in favor of Koolau Group, reasoning:
[Weidenbachs] herein are claiming that there was either a promise for or an oral long-term (35-year) lease. [Weidenbachs] were informed by [Mendes's] October 23, 1991 letter that there was only a month-to-month tenancy which was to terminate effective December 31, 1991. Therefore, at that point, [Weidenbachs] were informed that [Koolau Group was] breaking the promise to enter into a long-term lease or that there was no 35-year lease. If there was any promise or lease, it was breached at that point.
The circuit court added that Weidenbachs' claims based on Koolau Group's allegedly tortious acts were "likewise barred by the statute of limitations".

1. Breach of Contract Causes of Action
Weidenbachs allege that they suspended the operations of the Farm and vacated the Property on December 18, 1992. However, a January 3, 1992 letter from Ronald Weidenbach to Mendes, attached to Weidenbachs' Memorandum Opposing SJ, indicates otherwise: "In a separate matter, I notice that the $200 security deposit for the rental home at 53-270 Kamehameha Highway, which I vacated on 10/15/91, has not yet been returned to us." Additionally, copies of letters from Koolau Ag to Weidenbachs, attached to Weidenbachs' Memorandum Opposing SJ, indicate otherwise:
(1) A January 8, 1990 letter, which stated: "This is to notify you that no long term rental agreements will be issued for the year 1990 however we will continue our present month-tomonth rental with you."
(2) An October 1, 1991 letter, which stated: "Koolau Agricultural Co., Ltd. will be terminating your month to month residential tenancy at 53-270 Kamehameha Highway in 45 days from the receipt of this letter."
(3) An October 23, 1991 letter, which stated: "We are targeting December 31, 1991 as the termination date of your month-to-month farm tenancy as well as the date for your leaving the premises."
The statute of limitations for breach of contract or other obligation is six years.[4]
Under Hawai'i law, "a right of action accrues whenever... a breach of... contract has occurred... as will give a right to then bring and sustain a suit." Schimmelfennig v. Grove Farm Co., 41 Haw. 124, 130 (1955); see also Waxman v. Citizens Nat, Trust & Sav. Bank of Los Angeles, 123 Cal. App. 2d 145, 266 P.2d 48, 50 (1954) ("Ordinarily, a cause of action for breach of contract accrues on the failure of the promisor to do the thing contracted for at the time and in the manner contracted.")
Water Comm'n of County of Hawai'i v. Nat'l Am. Ins. Co., 930 F. Supp. 1411, 1419 (1996).
The Hawai'i Supreme Court has defined the concept of "accrual" as follows:
In Yoshizaki [v. Hilo Hospital], 50 Haw. 150, 433 P.2d 220 (1967)], we defined the word "accrued" as it appears in Hawaii's statutes of limitation to mean that the statute does not begin to run until the plaintiff knew or should have known of defendant's negligence. Id. at 154, 433 P.2d at 223; see Waugh v. University of Hawaii, 63 Haw. 117, 621 P.2d 957 (1980); Basque v. Yuk Lin Liau, 50 Haw. 397, 441 P.2d 636 (1968).
Agustin v. Dan Ostrow Constr. Co., 64 Haw. 80, 83-84, 636 P.2d 1348, 1351 (1981). The Agustin court held that plaintiff-homeowners' suit was not barred by the statute of limitations where their suit had "matured" within the statute of limitations applicable at the time. Id. at 84, 636 P.2d at 1351. The homeowners discovered the breach of the construction contract, which had required use of corrosion-proof nails, only nine years after construction when shingles began falling from the roof. Id. at 81, 636 P.2d at 1349-50. In Weidenbachs' case, there was no concealment of the existence of the action.
Regarding the purported disaffirmance of the sublease, the circuit court properly held that Scott v. Pilipo, 23 Haw. 739 (Haw. Terr. 1917), was inapposite to the instant case. Scott, the plaintiff-lessee, challenged the lower court's sustaining of defendants-lessors Pilipos' demurrer on the grounds that the claim was time-barred. Id. at 739-40. The Supreme Court of the Territory of Hawai'i ruled that where Scott had been prevented from obtaining possession of the premises and sought to recover the rent she had continued to pay, the "continuing contract" rule meant that the action accrued from the time of Scott's disaffirmance of the lease. Id. at 743. Scott's recovery was limited to damages sustained within this period of limitation. Id.
Scott was explained and distinguished by Nin v. City & County of Honolulu, 33 Haw. 409 (Haw. Terr. 1935). Nin's complaint contained a general allegation of the amount of damages sustained by Nin (unlike in Scott where Scott's alleged damages were made up of several separate items, one of which was recoverable to the extent it fell within the statute of limitations) because of the continued wrongful diversion of water by the City and County of Honolulu from the date of the original tort to the time Nin filed his action (a period of eight years). Nin, 33 Haw. at 410-11. Because Nin made a general allegation as to the amount of damages, his entire claim was vulnerable to a demurrer. Id. at 412. The supreme court held that part of Nin's damages was barred by the statute of limitations and, because it was impossible to tell from the complaint how much of Nin's damages fell within and how much remained outside of the statute, Nin's failure to state the extent of the damages suffered was fatal to the complaint and the demurrer must be sustained. Id. at 411-12.
The causes of actions on the tangible breaches of the purported sublease began to accrue immediately upon their occurrence. Water Comm'n of County of Hawai'i, 930 F. Supp. at 1419. Even assuming Weidenbachs were not otherwise aware that the purported long-term sublease had been repudiated by Koolau Group, Weidenbachs were put on notice of the repudiation by the January 8, 1990, October 1, 1991, and October 23, 1991 correspondence from Koolau Ag.
Thus, upon review of the pleadings, affidavits, and evidence viewed in the light most favorable to Weidenbachs (that is, assuming an enforceable sublease existed), the circuit court properly entered summary judgment in favor of Koolau Group because the breach-of-contract actions were time-barred. Bitney v. Honolulu Police Dep't, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

2. Tort Causes of Action
The pleadings indicate that Weidenbachs believed they had been promised not only the rights concomitant with a traditional property rental, but also an array of covenants that would allow them to pursue development of their aquaculture venture. Some of these covenants involved promised services and goods, such as those to construct a residence upon the property and to allow Weidenbachs access to the lower Punalu'u Stream for their water supply. Other causes of action, including the damage caused by Koolau Group's staff to the fish hatchery while the hatchery was being dismantled in December 1992, were tort actions. Damage to property and persons is subject to the limitation in Hawaii Revised Statutes (HRS) § 657-7 (1993).[5]
For tort causes of action, "accrual" is defined as follows:
Our courts have interpreted the word "accrues" under HRS § 662-4 to mean that the statute does not begin to run "until the plaintiff knew or should have known of the defendant's negligence." Waugh v. University of Hawaii, 63 Haw. 117, 127, 621 P.2d 957, 966 (1980) (quotation marks and citation omitted). The Hawai'i Supreme Court later interpreted a similar statute of limitations, HRS § 657-7 (1993), to mean that a claim against the State "accrues" when the claimant "discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty [to the claimant]; and (3) the causal connection between the violation of the duty and the damage." Hays v. City and County of Honolulu, 81 Hawai'i 391, 396, 917 P.2d 718, 723 (1996) (citation omitted) (interpreting HRS § 657-7.3 (1993) and HRS § 657-7).
Anderson v. State, 88 Hawai'i 241, 247, 965 P.2d 783, 789 (1998) (footnote omitted; brackets in original).
As the most recent tortious activity occurred in December 1992 and the initial complaint was filed in 1998, the two-year provision in HRS § 657-7 bars the Weidenbachs' claims sounding in tort. Hence, we conclude that the circuit court properly granted Koolau Group's Motion for SJ as there was no genuine issue as to any material fact, and viewing the evidence in the light most favorable to Weidenbachs, Koolau Group was entitled to a judgment as a matter of law because the claims were time-barred. Kamaka, 117 Hawai'i at 104, 176 P.3d at 103.

B. Amendment of Pleadings

1. Pleading Fraud with Particularity
Hawai'i Rules of Civil Procedure (HRCP) Rule 9(b) requires that an allegation of fraud be pleaded with particularity.[6] In Larsen v. Pacesetter Systems, Inc., 74 Haw. 1, 837 P.2d 1273 (1992), a complex products liability action, the Hawai'i Supreme Court elaborated on the policy behind HRCP Rule 9 (b):
The elements of fraud include: 1) false representations made by the defendant; 2) with knowledge of their falsity (or without knowledge of their truth or falsity); 3) in contemplation of plaintiff's reliance upon them; and 4) plaintiff's detrimental reliance. Hawai'i's Thousand Friends [v. Anderson], 70 Haw. [276,] 286, 768 P.2d [1293,] 1301 [(1989)]. HRCP Rule 9(b) provides that "in all averments of fraud the circumstances constituting fraud or mistake shall be stated with particularity." The rule is designed, in part, to insure the particularized information necessary for a defendant to prepare an effective defense to a claim which embraces a wide variety of potential conduct. 5 Wright & Miller, Federal Practice and Procedure § 1296 at 580 (1990). Thus, under Rule 9(b) general allegations of "fraud" are insufficient because they serve little or no informative function, Wolfer v. Mutual Life Ins. Co. of New York, 3 Haw. App. 65, 67, 641 P.2d 1349, 1359 (1982) (citing 5 Wright & Miller, Federal Practice and Procedure § 1298 at 415 (1969)); rather, a plaintiff must state the circumstances constituting fraud or mistake with particularity (e.g., allege who made the false representations) and specify the representations made. Ellis v. Crockett, 51 Haw. 45, 59, 451 P.2d 814, 823 (1969).
Id. at 30-31, 837 P.2d 1288 (ellipsis and brackets in original omitted).
Larsens alleged in their first amended complaint that Pacesetter knowingly sold a defective pacemaker and represented that the pacemaker would safely perform the intended function, but Larsens failed to allege "fraud" or detrimental reliance. Id. at 31, 837 P.2d at 1288-89. The Hawai'i Supreme Court held that not only did Larsens' complaint fail to set forth particularized allegations regarding the circumstances constituting fraud, but it also failed altogether to set forth a distinct claim for relief sounding in fraud. Id. at 31, 837 P.2d at 1288-89.
Weidenbachs' complaint alleged that Koolau Group and Weidenbachs had come "to an oral agreement on the material terms of an arrangement" involving a thirty-five-year sublease under the terms of which Koolau Group would provide water, excavate ten ponds, maintain flood protection, construct a single-family dwelling, and perform "other obligations necessary to the successful operation" of the Farm. The complaint alleged that Weidenbachs wound down their previous aquaculture business, prepared to move to the Punalu'u property, and began the permitting, surveying, and planning processes "in reliance on" the purported agreement. The complaint also alleged that in performing the enumerated wrongful acts, "as well as other, wrongful acts, [Koolau Group] jointly and severally acted negligently, willfully [sic] and wantonly and in gross abrogation of [Weidenbachs'] rights." Weidenbachs argue, on appeal, that their claim for punitive damages put Koolau Group "on notice of claims far more serious than simple breaches of contract, such as fraud or other malicious conduct".
Although Weidenbachs alleged that Koolau Group promised various benefits (which Weidenbachs relied upon) under the sublease, Weidenbachs failed to specifically allege what intentional misrepresentations were made and who made them as required under HRCP Rule 9(b). Larsen, 74 Haw. at 30-31, 837 P.2d at 1288.

2. Relation Back
Weidenbachs challenge the circuit court's denial of their Motion to Amend Complaint to allege fraud on the part of Koolau Group. The amendment and relation back of pleadings is provided for in HRCP Rule 15.[7]
HRCP Rule 15 is similar, but not identical, to Federal Rules of Civil Procedure Rule 15, it is not identical to it. As noted by the United States District Court for Hawai'i, "[HRCP] 15(c)... is slightly more restrictive than the current federal rule because it requires that the added party must have had notice within the limitations period, not the limitations period plus Fed. R. Civ. P. 4(j) service period as is currently the rule." Heiser v. Ass'n of Apartment Owners of Polo Beach Club, 848 F. Supp. 1482, 1487 n.2 (D. Hawai'i 1993).
In Mauian Hotel, Inc. v. Maui Pineapple Co., 52 Haw. 563, 481 P.2d 310 (1971) (an action to recover for property damage caused by the overflow from a burst dam, id. at 564, 481 P. 2d at 312), the Hawai'i Supreme Court held that an amendment alleging new facts regarding damage to a hotel arose out of a "new occurrence" and, therefore, did not relate back for purposes of HRCP Rule 15(c). 52 Haw. at 568, 481 P.2d at 314. The supreme court interpreted HRCP Rule 15(c) to require timely notice via formal pleadings to preclude "stale claims where the other party must gather evidence after time has dissipated memories, documents and real evidence." 52 Haw. at 565-66, 481 P. 2d at 313. The court clarified that the defendant needed to be put on notice "of what evidence to gather," and, therefore, any amendment requiring additional evidence that was not reasonably foreseeable from the original pleadings should be deemed a "new occurrence". Id. at 568, 481 P.2d at 314.
Applying this test to the present case, we conclude that Weidenbachs' fraud allegations raise significant questions that were not raised in the complaint. In their memorandum in support of the Motion to Amend Complaint, Weidenbachs alleged that Koolau Group (1) had the intention to bring "several large volume water users" onto the property in order to establish an "existing water use" under the new state water code; (2) made several false statements regarding why a promised residence was not constructed on the Property; (3) engaged in a scheme to drive off most of Koolau Group's other "high water usage" tenants; and (4) brokered a "water banking" scheme to divert and credit water allocations to housing developments in leeward Oahu. These allegations raised additional questions as to the nature of Koolau Group's water development in the Punalu'u region, the changes to the state water code and how those changes would potentially benefit Koolau Group in this venture, and what particular defendants had knowledge of the alleged misrepresentations as well the alleged larger conspiracy. Therefore, we conclude that the proposed amendment would not relate back.

3. Undue Delay
The denial of the Motion to Amend Complaint was also not an abuse of discretion because Weidenbachs unduly delayed prosecuting this case. Kamaka, 117 Hawai'i at 104, 176 P. 3d at 103. In Bishop Trust Co. v. Kamokila Development Corp., 57 Haw. 330, 555 P. 2d 1193 (1976), the Hawai'i Supreme Court summarized the relevant analysis for determining whether a delay in prosecution justifies a denial of a leave to amend:
In Boris v. Moore, 253 F.2d 523 (7th Cir. 1958), the plaintiffs were denied leave to amend their complaint to state a claim for affirmative relief against a defendant as to whom such relief had not previously been claimed. The motion to amend was made more than eight months after the answer had been filed, during which the one [sic] of the plaintiffs with whom the defendant had dealt directly in the questioned transactions had died. Prior to the death, the defendant had taken this plaintiff's deposition and had foregone the opportunity to question him about any claim for affirmative relief. Upon these facts, it was held that the trial judge had not abused his discretion in denying the motion to amend.
Cases involving undue delay in amending answers apply similar criteria. In Albee Homes, Inc. v. Lutman, 406 F.2d 11 (3rd Cir. 1969), the trial court's discretion was sustained in denying leave to amend a reply to a counterclaim in order to plead the affirmative defense of release, where the amendment was sought on the eve of trial over 30 years after the reply had been filed and there was no claim that the defense was not known then. In Komie v. Buehler Corporation, 449 F.2d 644 (9th Cir. 1971), which was an action for personal injuries in a boat accident, the defendants admitted in their answer and pretrial statement that the boat had been operated by their employee within the scope of his employment, and were denied leave to amend so as to withdraw these admissions. As in the present case, the trial court failed to state a reason for its ruling. In affirming, the appellate court said:
Here there were "justifying" reasons which were readily apparent. The motion was made 31 months after the answer was filed, eleven months after the pretrial statement was signed, and more than six months after the case was set for trial. There had been extensive discovery, none of which had been directed to the question of agency by reason of the admission that Bechtel was Buehler's employee and acting within the scope of his employment. The proposed amendment was not based upon any facts which were not known or readily available to the defendants and their counsel, at least when the pretrial statement was signed. The motion to amend was made just three weeks before the trial date after Komie had agreed to settle with Belknap.
Under these circumstances we cannot say that the district court abused its discretion in denying the motion to amend.
To similar effect, also see Nevels v. Ford Motor Co., 439 F.2d 251 (5th Cir. 1971); Inland Container Corp. v. Atlantic Coast Line R. Co., 266 F.2d 857 (5th Cir. 1959).
Id. at 337-38, 555 P.2d at 1198.
Weidenbachs began their aquaculture operation on the Property in about March of 1988, vacated the house on October 15, 1991, and ceased Farm operations on December 18, 1992 according to their own pleadings and admissions. The complaint was filed on December 15, 1998. Weidenbachs did not file a pretrial statement until June 23, 2000. The Motion to Amend Complaint was filed on March 21, 2001, about twenty-seven months after the filing of the complaint.
Attached to Koolau Group's memorandum in opposition to the Motion to Amend Complaint was an affidavit of Valerie L. Mendes Trotter attesting to the fact that many critical witnesses, including former employees of Koolau Ag and Pac-Asian and representatives of third-party governmental agencies, were either deceased or were not longer employed in their former positions and would be extremely difficult to trace. Given that Weidenbachs' claims were filed after the statutory deadlines and that Weidenbachs thereafter dragged out the timetable for litigation to the detriment of Koolau Group's ability to adequately defend the suit, the instant case meets the test for undue delay. Therefore, denial of leave to amend the complaint was not an abuse of discretion. See Bishop Trust, 57 Haw. at 337-38, 555 P.2d at 1198.

IV. CONCLUSION
The Judgment entered on May 1, 2001 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Dan T. Kochi presided.
[2] This appeal was assigned to this court on February 5, 2002. On May 13, 2003, Koolau Ag, Trotter, Mendes, and Pac-Asian notified this court that each of them had filed a petition for bankruptcy on April 28, 2003 in the United States Bankruptcy Court for the District of Hawaii. Pursuant to Hawai'i Rules of Appellate Procedure Rule 54(c), this appeal was stayed. Koolau Ag and Pac-Asian's bankruptcy proceedings were concluded on April 26, 2006. On February 13, 2009, Trotter and Mendes informed this court that their bankruptcy proceedings had concluded on November 3, 2008 and February 10, 2009, respectively.
[3] Weidenbachs' opening brief fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(3) by failing to include record references supporting each statement of fact; HRAP 28(b)(4) by failing to state in the points of error where in the record the error occurred and a quotation of the finding or conclusion urged as error; and HRAP 28(b)(7) by presenting argument not contained in Weidenbachs' contentions on points of error presented. Weidenbachs' counsel on the opening brief are warned that future noncompliance with HRAP Rule 28 may result in sanctions against them.
[4] Hawaii Revised Statutes (HRS) § 657-1 (1993) provides:

§657-1 Six years. The following actions shall be commenced within six years next after the cause of action accrued, and not after:
(1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A;
(2) Actions upon judgments or decrees rendered in any court not of record in the State, or, subject to section 657-9, in any court of record in any foreign jurisdiction;
(3) Actions for taking or detaining any goods or chattels, including actions in the nature of replevin;
(4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.
[5] HRS § 657-7 provides:

§657-7 Damage to persons or property. Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13.
[6] HRCP Rule 9(b) provides:

Rule 9. Pleading special matters.
....
(b) Fraud, mistake, condition of the mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
[7] HRCP Rule 15 provides:

Rule 15. Amended and supplemental pleadings.
(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.
(b) Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
(c) Relation back of amendments. An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
(d) Supplemental pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.